way Co., 100 U. S. 213, 225, 25 L. Ed. 612; Rice v. Eureka Paper
Co., 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep.
585. It seems to me that this case does not necessarily present the
feature of a continuance of the plaintiff to work with Spausta with
as full knowledge of Spausta's incompetency as had the master,
and therefore, despite the assurance or promise of the master,
plaintiff's continuance of the risk with knowledge thereof equal
to the master's defeats his recovery under the rule of Marsh v.
Chickering, 101 N. Y. 396, 5 N. E. 56, and kindred decisions. The
risk to be removed could have been removed at once, for the com-
plaint was made to the foreman, who was empowered in the prem-
ises, and Spausta was at hand, so that presumably a command or
direction to Spausta would have sufficed. Continuance of plain-
tiff's work, then, did not necessarily mean continuance of the risk.
It does not appear that plaintiff went to work with Spausta, or
that he saw Spausta come to work in his vicinity, or knew that
Spausta was at work there before he looked around and was there-
upon injured, or that the place where Spausta then worked was
within the vision of the plaintiff while he labored at his own task,
or that Spausta's work necessarily informed plaintiff of Spausta's
presence. And it does follow that, as the plaintiff began work alone,
with none about him, and only worked 10 minutes before the ac-
cident, Spausta could have been in his vicinity for as long as 10
minutes, and, for aught that appears, he may have been driving
his first nail. The case did not, in this aspect, present a question
of law that warranted a dismissal on the ground that the plaintiff
continued to incur the risk.

Judgment reversed, and new trial granted; costs to abide the event. All
concur.

(100 App. Div. 59)

### HERSE et al. v. QUESTA et al.

(Supreme Court, Appellate Division, Fourth Department. December 7, 1904.)

1. BOUNDARIES—ESTABLISHMENT ON GROUND—BINDING EFFECT.
    Where adjoining owners took their conveyances from a common
    grantor with reference to a boundary line he had located on the ground,
    the deeds describing the tracts as certain lots in a block, the location was,
    irrespective of lapse of time, binding on the owners and those claiming
    under them.

Appeal from Judgment on Report of Referee.

Action by Robert Herse and another against Angelo J. Questa
and another. Judgment for plaintiffs. Defendants appeal. Af-
firmed.

The following is the opinion of Thrasher, Referee:

This action is ejectment to recover of the defendants a strip of land 1 foot
6 inches wide, on a portion of which stands a brick building erected by de-
fendants' immediate grantor. The whole question depends upon the location
of the boundary line betwen the lands of the defendants and the adjoining
lands of the plaintiffs, who all take from a common grantor. All the con-
veyances in both chains of title described the lands simply by lots in block
83, according to a map made by T. J. Gosseline, Esq. It appears that the

map referred to was made by Gosseline in 1835, and represents the survey by him of a large tract of land laid out as village property for the proprietors into streets, blocks, and lots, and which streets were named on the map, and the blocks and lots numbered. According to such map the lands of the parties hereto were embraced in what was block 83 on the map, and are lots 45, 46, and 47 in said block; the plaintiffs taking title of lots 45 and 46, and the defendants having acquired title to lot 47. The disputed boundary is the line between lots 46 and 47. The map in question gives no distance as to the width or length of lots, but the map purports to be drawn to a scale. It is not, however, practicable to ascertain by measurements on the map these widths or lengths with sufficient accuracy to permit precise location of lines on the ground, and recourse is had, and it had been the practice generally of surveyors to go to what is called a block book or books (not mentioned in the conveyances) to ascertain such measurements. It does not appear when such book was made, or by whose authority, but it has been used with reference to lines on the map for many years, generally by parties seeking to locate map lines of lots, blocks, and streets. Even with its aid much difficulty is experienced, and has always existed, in locating lines generally in accordance with such map, and embraced within such survey, and much trouble and litigation has arisen over such locations as the land has been improved and built upon, and as the tract surveyed has developed from a wilderness into a city. The streets of the city have finally become located and marked whether as originally located or not. It has become customary to measure, in locating lots, from the street boundaries as now located. Such locations made now provoke much litigation, due to shortages and overplus in the blocks between streets. In the present case a measurement from Third street, as now located, giving the width of lots now contained in the block book, will leave the disputed boundary west of the disputed land by 5 inches, and west of the line claimed by the plaintiffs by 2 feet, and leaving the disputed land wholly within the defendants' title. But Third street was located as at present quite recently, and it does not appear with what degree of accuracy it was made to conform to the map lines. It does, however, appear that before the conveyances on either side were made by the common grantor, and while the defendants' grantor was in possession, but preceding the date of the conveyance, and at about the time when the plaintiff Ellen Herse purchased under a contract for a conveyance, one of the common grantors caused the now disputed line to be located by a surveyor, and marked the boundary as so located. Lay, then in possession of lot 47, the title to which she subsequently acquired, and Herse, in possession of lot 46, acquiesced in such boundary so ascertained, and Lay moved back her building so that its west side lay upon such boundary then ascertained, and the possession of each conformed to such boundary for about 10 years, and down to 1896. At that period, the original building which had been moved back to such ascertained boundary having burned, Glasser, the then owner, erected a new, substantial, brick building on the site of the building burned, except that he extended its west wall to the west, and beyond the location of the boundary made 10 years previously, and thereby took possession of the disputed land. He did this with the knowledge of the plaintiffs' claim of ownership and against their protest, and he has since, with his grantees, these defendants, held possession, claiming the boundary to be 18 inches west of the location previously made and acquiesced in. The defendants also purchased with knowledge of the precise claim of the plaintiffs. This location as made upon the ground, and the acquiescence following, are conclusive upon the defendants, and this boundary must remain as then located, even if it was located erroneously, as might subsequently be determined. Reed v. Farr, 35 N. Y. 113; Baldwin v. Brown, 16 N. Y. 359; Smith v. Faulkner, 48 Hun, 188; Sherman v. Kime, 86 N. Y. 57. The actual location then made, and with reference to which the parties contracted and took their titles on either side, will control, and is conclusive upon the question of the true location. Van Wyck v. Wright, 18 Wend. 158. This does not rest upon any presumption of fact that the parties have agreed upon a different boundary than the deed boundary, but upon the conclusive presumption that they found and correctly located the deed boundary, and that they subse-

quently took title on either side under their deeds, which described their lands to that boundary, and that such boundary line, open, notorious, and plainly marked upon the ground, is the boundary referred to in their respective deeds. Clearly, it was the intention of both parties taking their title from Chamberlain to take to the boundary which he fixed and marked. That was the line referred to in their contracts for their conveyances, and the one which all parties understood to be the boundary between the lots. And it is a principle of most common application in the determination of boundaries, as well as in the construction of contracts, that the intention and understanding of the parties at the time of the contract or conveyance must govern, when ascertained. And the rule, as stated in Van Wyck v. Wright, that a conveyance is to be construed in reference to its distinct, visible, and locative calls as appearing upon the ground in preference to quantity, course, map, or anything else, has been uniformly followed and applied. Singer v. Mayor, 47 App. Div. 44, 62 N. Y. Supp. 347; Bell v. Hayes, 60 App. Div. 382, 69 N. Y. Supp. 898; Burke v. Henderson, 54 App. Div. 157, 66 N. Y. Supp. 468; Barrows v. Webster, 70 Hun, 597, 25 N. Y. Supp. 1131; Seneca Nation of Indians v. Hugaboom, 9 N. Y. Supp. 699, affirmed 132 N. Y. 492, 30 N. E. 983.

It is insisted by the defendants that, in order to establish a line by practical location, there must be long acquiescence, not less than twenty years; and this would be so in order to establish a line other than the deed line, so as to make title in the party whose deed did not cover the disputed land, unless there was the element of estoppel in the case; but that rule will not apply where the location is fixed and the boundary marked upon the ground prior to the conveyance, and in reference to which boundary the conveyances have been made. The line established in that manner is presumably the line mentioned in the deed, and no lapse of time is necessary to establish such location. The location does not rest upon acquiescence in an erroneous boundary, but upon the fact that the true location was made, and the conveyance made in reference to it. From the contract with the plaintiff in 1885, and the deed to defendants' grantors in 1887, together with the proof of prior location, it appears that it was the intention of the Chamberlains to convey to the plaintiffs lots 45 and 46, and to the defendants' grantors lot 47, as such lots then were marked out upon the ground, and at that time all parties understood and could see where this boundary lay. Applying these principles here, the plaintiffs have shown title to the 18 inches of land encroached upon by the defendants, and are entitled to recover.

Findings and judgment accordingly.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Eaton & Page, for appellants.
W. V. Smith, for respondents.

PER CURIAM. Judgment affirmed, with costs, on opinion of THRASHER, Referee.

---

(101 App. Div. 93)

### REISERT v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. January 20. 1905.)

1. WATERS—LOWERING OF SUBTERRANEAN TABLE—DAMAGES—EVIDENCE—SUFFICIENCY.

In a suit for damages for lowering the natural level of the water table under plaintiff's land by the operation of pumps and driven wells adjacent to plaintiff's property, and for an injunction to restrain the operation of the pumps, evidence examined, and *held* to show that a finding that plaintiff had neither suffered damage to the rental nor the fee value of his land, other than the cost of driving his wells further into the ground, was unwarranted.