## ROETZEL v. RUSCH.

No. 22943.     April 9, 1935.

Rehearing Denied June 4, 1935.

S. A. Horton, for plaintiff in error.

Ted R. Fisher and Ledbetter, Stuart, Bell & Ledbetter, for defendant in error.

PER CURIAM. This is an action in ejectment by way of cross-petition by defendant in error, Henry Rusch, Sr., defendant in the case in the lower court, against plaintiff in error, Joe P. Roetzel, plaintiff below, for the recovery of the south 1½ feet of lot 10, block 40 in the city of Okeene, Blaine county, Okla., and for damages, rents and profits, coupled with a prayer for general relief. The parties will be referred to as below.

At the conclusion of the trial, each of the parties separately moved the court to withdraw the case from the jury and to decide the case in his favor, on the theory that there was no conflict in the evidence. The lower court withdrew the case from the jury, and sustained the motion of defendant for judgment on the evidence, entering judgment in favor of the defendant and against plaintiff for the immediate possession of the south 1⅓ feet of said lot 10, and perpetually restraining and enjoining plaintiff, and those claiming by, through and under him, from in any manner interfering with the possession thereof by the defendant; and from this judgment and the

order of the lower court overruling the motion of plaintiff for a new trial, after proper exceptions, plaintiff has appealed to this court.

According to uncontroverted evidence, in the year 1905 one Fisher owned lots 9, 10, 11, and 12, in ·block 40 in the town of Okeene, and procured the then county surveyor to stake off the two south lots, being lots 11 and 12, for the purpose of erecting thereon a permanent two-story brick hotel building, of the width of the two lots, and the building was constructed and thereafter maintained according to the lines established by the surveyor. The cross-action of defendant, commenced in the year 1931, is based upon the contention that the ownership of lot 10 by defendant is according to the originally platted width thereof, being 25 feet, and that the brick hotel building, now owned by plaintiff, encroaches upon some 16 inches of lot 10 as **originally platted.** Lots 9, 10, 11 and 12 were a part of a plat which designated distances, courses and dimensions of the lots, the platted width of each lot being 25 feet. Plaintiff contends that there was no encroachment and that the boundary between lot 10 and lot 11 as platted had been changed by deed or acquiescence of the owners.

It was stipulated below that defendant owns lots 9 and 10 with a direct chain of title from the government; that plaintiff owns lots 11 and 12 with a direct chain from the government; that on January 15, 1916, one Naftzer and wife were the owners of the four lots, and on that date conveyed lots 9 and 10 to the predecessors in title of defendant, and in 1919 conveyed lots 11 and 12 to the plaintiff; that there is no controversy as to the ownership of the north wall of the above-mentioned brick building; and that the only question in controversy is as to whether or not the north wall of the building owned by plaintiff encroaches upon the property owned by the defendant.

Except for this stipulation, the statutory effect of the general denial in plaintiff's reply was to deny defendant's title to, but to admit plaintiff's possession of, the south 1½ feet of lot 10. The stipulation, however, reversed the effect of plaintiff's reply, and caused defendant to admit plaintiff's title to lot 10, and the parties to agree that the single issue was whether plaintiff was in possession of any part of lot 10. Both parties evidently knew and were agreed as to the exact physical location of plaintiff's building. Therefore, the effect of the stipulation was to make the single issue whether

the ground under any part of the building was at the time a part of lot 10. A conclusion of fact on this issue might have been reached in either of two ways: (1) By proving what lot 10 originally had been, and presuming that it had not been changed; or (2) by proving what that lot had been and that it had been changed in some way, as by a change of the boundaries by the deed or act of the common or separate owners, or both. After the proof of either alternative, the encroachment would be or not be a mere conclusion of fact to be deduced from the known and agreed physical fact of the actual location of the building. If the lower court erred, we think that the error was in confining plaintiff to that part of the issue which involved the original boundaries of the lots, and in not interpreting the stipulated issue as including the alternative of a change in those boundaries. In one sense, this action of the lower court was consistent with the letter of the stipulation. However, it is apparent from the entire record that the attorneys for both sides did not use exactness and fineness of language in their stipulations, and that the real meaning of the stipulation in this case is as above stated by this court. This court holds that the issue was, What was lot 10, either originally, or as constituted by changed boundaries?

Defendant, having the burden, introduced evidence by way of a survey and other proof, showing that lots 9, 10, 11, and 12 as originally platted, were of the width of 25 feet each, and tending to establish that the building of plaintiff was 51 feet and 4 inches in width, and occupies not only the platted 50 feet width of lots 11 and 12, but in addition thereto the south 1 foot and 4 inches of lot 10 as originally platted.

At the trial, plaintiff questioned the correctness of the points or base lines from which the survey of defendant was made; and offered evidence of a former survey and other facts, which he contended would show that the north line of his building was located several inches south of the south line of lot 10 as originally platted. Plaintiff also introduced the testimony of the contractor who constructed the building, to the effect that in the year 1905 one Fisher, the then common owner of lots 9, 10, 11, and 12, had procured a surveyor to establish the lines of two 25-foot lots (which the evidence reasonably establishes to have been intended by Fisher to be lots 11 and 12), for the erection of the hotel building thereon, and employed the witness to erect the building on the two lots so staked out, and

that the witness constructed the building according to the lines so established by the surveyor.

It was stipulated that common ownership of the four lots continued until January 15, 1916, when one Naftzer, then the common owner, conveyed lots 9 and 10 into the separate ownership of a predecessor in title of defendant, and that in 1919 Naftzer conveyed lots 11 and 12 to plaintiff, Roetzel. Defendant acquired lots 9 and 10 on November 1, 1926. It was stipulated that the lots were always conveyed in pairs—that is, lots 9 and 10 as one pair, and lots 11 and 12 as another pair.

From all the evidence, except for the absence of title deeds, it reasonably appears that after the construction of the hotel building in 1905, the successive common owners of the four lots until segregation of the ownership of lots 9 and 10, and thereafter the separate owners of both pairs of lots until in the latter part of 1930, at all times considered (a) the property composed of plaintiff's hotel building, and land of the width of the land on which the building was located, as one property, and as being the property which was conveyed to and occupied and claimed by plaintiff as lots 11 and 12, and (b) the part of lots 9, 10, 11, and 12 lying north of plaintiff's building as another property, i. e., the property which was conveyed to and occupied and claimed by defendant, i. e., lots 9 and 10, and (c) therefore that the boundary between lots 9 and 10 and lots 11 and 12 was a line drawn by the north outer line of plaintiff's building. Fisher employed the surveyor to stake off two of the lots. He then employed the contractor to erect the hotel building on two of the lots, and the contractor and Fisher considered that this was done. In 1916 Naftzer conveyed to Cline lots 9 and 10, and retained lots 11 and 12 and the building. Regrettably, neither that deed, nor any of the other conveyances in either chain of title, was introduced in evidence, and there is no evidence as to whether that deed or other deeds conveyed lots 9 and 10 (or lots 11 and 12) by reference to the original plat, or with reference alone to any other plat, or conjoined language which may have limited references to lot numbers by references to lines or monuments, for instance, by reference to the building as being located on lots 11 and 12. The brief of defendant in this court states that the Naftzer deed, in addition to conveying lots 9 and 10, conveyed a limited easement or interest in the "north wall of the

building located on lot 11." We might be inclined to construe such a conveyance as an express agreement between grantor and grantee (a) that the building was located as stated and not on lots 9 and 10, and therefore necessarily (b) that lots 9 and 10 were not the land on which the building was located; and (c) that grantor and grantee by making and accepting the express conveyance of rights in the wall were agreeing that the conveyance by its grant of lots 9 and 10 did not convey the wall as an improvement thereon, and therefore inversely (d) that the wall was not located on lots 9 and 10 as intended to be conveyed. But the record does not support such statement of defendant's brief. The contents of the deeds are not in evidence.

It is difficult to conceive that either Naftzer or his grantee, or any of the immediate or remote grantees of either, understood that Naftzer intended to convey away the land under 16 inches of the building retained by him. It does not appear that any of such grantees ever questioned that the boundary between the two properties was a line consistent with the north outer line of plaintiff's building until in December, 1930, after plaintiff had filed suit for ground rent on the wall interest of defendant. Then defendant procured a new survey showing that the wall encroached slightly on lot 10 as platted.

In 1917, the predecessor in title of defendant constructed a permanent building on lots 9 and 10. This building was 48 feet and 8 inches in width, and covered the entire width of what the builder and everyone else evidently regarded as the builder's property, that is, lots 9 and 10. Defendant evidently acquired and owned the property with that understanding. The new building was joined to, and used, and enjoyed the previously granted (if previously granted they were, as indicated by the deeds plaintiff offered in evidence) wall rights in plaintiff's building. The jointly used wall burned. No question of boundary appears to have been raised at that time. The wall was repaired by the then separate owner of plaintiff's property, evidently in reliance upon the wall being on his land and not being on defendant's land. The owner of the other property stood by.

Plaintiff offered to prove by various deeds and records in the chains of title of defendant and plaintiff that plaintiff and defendant were jointly interested in the wall, evidently on the theory that this would limit

the effect of any judgment of ejectment, and that the deeds under which defendant holds expressly described the wall as located on lot 11, and therefore described lot 11 as being the property on which the wall was located. A deed offered in evidence by plaintiff was a quitclaim deed dated July 3, 1929, from Henry J. Schuler and wife, admitted formerly to have been holders of title, to defendant. This deed purported to convey one-half interest in the north wall of plaintiff's building, with the right to build and join thereto up to the second story, this right being otherwise limited, and expressly described the building as located on lots 11 and 12. On defendant's objection that these deeds were not within the issues, they were excluded, to which plaintiff duly excepted.

It is unnecessary to do so in deciding this appeal, and therefore this court does not consider the contentions of the parties as to whether there was actual encroachment by plaintiff's ·building on lot 10 **as originally platted,** or the admissibility of evidence offered on that phase of the issue, which is left entirely open.

Plaintiff in error, while contending that there was no encroachment on lot 10, **as originally platted,** further contends that if there were such encroachment, it would be immaterial because by the acts and deeds of the parties and their respective predecessors in title, the platted intervening boundary between the respective properties of plaintiff and defendant had been changed and re-established from the line originally platted so as to be a line consistent with the north line of his building; that if the deeds did not effectually so re-establish the line, the parties and their predecessors had made the new boundary effective by their acquiescence; and that the lower court erred in excluding the evidence offered by him by way of deeds, as showing such re-establishment of boundary by deed and acquiescence.

Defendant in error contends that the deeds and acts of the various owners, including himself, did not have the effect of changing, or acquiescing in a change·of, the intervening boundary; that plaintiff not having pleaded acquiescence or estoppel, could not properly introduce evidence thereof; and that the **platted** boundaries and dimensions control.

As a basis for determination of the admissibility of the evidence by way of deeds offered by plaintiff, for the purpose of showing acquiescence of the parties in change of boundary, this court concludes that the defense of acquiescence or estoppel was within the pleadings. In the case of Stanfield v. Lincoln, 150 Okla. 289, 1 P. (2d) 387, citing numerous cases previously decided by this court, this court stated what is the well and definitely established rule in this state, as follows:

"In an action of ejectment, all defenses, legal and equitable, may be proven under a general denial."

The decisions of this court to the effect of the language just quoted are based upon and interpret section 593, Oklahoma Statutes 1931, governing the pleadings in ejectment cases. The pleading of plaintiff to the ejectment cross-petition of defendant contained a general denial. Under the rule above stated evidence of acquiescence or estoppel was within the issues.

Pursuing the question of admissibility of the deeds, that the common owner of two adjoining tracts of land, by deed conveying the properties into separate ownership, may change or re-establish the intervening boundary between the two tracts, and thus alter the dimensions of both tracts, so that the same will be binding upon his grantees, immediate and remote, is too elementary to require this court to cite authorities to support the statement. That a change of intervening boundary and dimensions also may be established by the act and acquiescence of the owners of two adjoining properties sufficient to constitute estoppel, likewise is so elemental as not to require citation of authorities.

Taking into consideration the incomplete showing contained in the record as to joint ownership of the wall; the stipulation that the ownership of the wall was not in controversy; the resulting indication that interests in the wall had been conveyed to defendant by various deeds, evidently in deeds conveying lots 9 ·and 10 as stated in the brief of defendant in error, in addition to being conveyed by the separate quitclaim deed offered in evidence by plaintiff; there could hardly have been more material, relevant or important evidence than the deeds under which either or both of the parties claimed the title to either the lots or the wall, or both. The stipulation showed that certain numbered lots in the town of Okeene were so conveyed to and owned by the respective parties, but did not show whether they were conveyed or owned with reference to any certain plat, or by any stated boundaries or dimensions. The evidence showed that the lots were originally platted as a

part of the original plat of the city of Okeene. It might be held that the stipulated reference to the lots as certain lots in a certain block in the town of Okeene, coupled with the evidence as to the original plat, was sufficient to establish the conveyance and ownership to have been according to such plat, except for the fact that the record indicates that the one issue of encroachment reserved from the stipulation, in its final analysis, is partly an issue as to whether the parties by act and deed had changed, or by estopping acts had acquiesced in a change of, the platted boundary between the two properties, if plaintiff's building extended over the **platted** boundary; and except for the further fact that the quitclaim deed offered by plaintiff showed plainly that defendant claimed an interest in the wall under a deed which expressly stated that the building was located on lots 11 and 12 and conveyed to him **limited** wall rights which it is hardly conceivable he would have purchased or accepted if he already owned the wall or the ground under it; and except for the fact that the brief of defendant states that defendant held title to lots 9 and 10 and wall rights under similar deeds; and except for the other facts heretofore stated in this opinion showing the long standing attitude of all concerned, including the construction and reconstruction of improvements, in evident reliance upon a different boundary than the platted boundary. The other evidence offered by plaintiff in the way of deeds would have tended to show a consistent treatment of the wall as located on lot 11.

In the case of Herse et al. v. Mazza et al., 91 N. Y. Supp. 778, the appellate division of the Supreme Court of New York had before it a case very similar to this case. In that case the syllabus of the court was:

"Where adjoining owners took their conveyances from a common grantor with reference to a boundary line he had located on the ground, the deeds describing the tracts as certain lots in a block, the location was, irrespective of lapse of time, binding on the owners and those claiming under them."

In reaching the above conclusion, the court said:

"It is insisted by the defendants that, in order to establish a line by practical location, there must be long acquiescence, not less than 20 years; and this would be so in order to establish a line other than the deed line, so as to make title in the party whose deed did not cover the disputed land, unless there was the element of estoppel in the case; but that rule will not apply where the location is fixed and the boundary marked upon the ground prior to the conveyance, and in reference to which boundary the conveyances have been made. The line established in that manner is presumably the line mentioned in the deed, and no lapse of time is necessary to establish such location. The location does not rest upon acquiescence in an erroneous boundary, but upon the fact that the true location was made, and the conveyance made in reference to it. From the contract with the plaintiff in 1885, and the deed to defendants' grantors in 1887, together with the proof of prior location, it appears that it was the intention of the Chamberlains to convey to the plaintiffs lots 45 and 46, and to the defendants' grantors lot 47, as such lots then were marked out upon the ground, and at that time all parties understood and could see where this boundary lay. Applying these principles here, the plaintiffs have shown title to the 18 inches of land encroached upon by the defendants, and are entitled to recover."

The principles announced in that case are clearly correct, and are applicable to the facts in this case.

In the case of Anderson-Pritchard Oil Corporation v. Key Okla Oil Co. et al., 149 Okla. 262, 299 P. 850, this court had before it the effect of a conveyance by lot numbers, where the conveyance in addition to the lot numbers contained descriptive references to monuments; and in that case, with elaborate discussion and citation of supporting authorities, this court laid down the following rule:

"Whenever a deed describes property by reference to a plat or map, the grantor is considered as having adopted the plat or map as a part of the deed, and the grantee takes title in accordance with the boundaries so identified."

In that case, this court stated a qualification of that rule as follows:

"Where there is a discrepancy between the call in a deed for monuments and courses and distances shown by a plat referred to in the deed, the normal rule as to the controlling effect of calls for monuments will be followed."

The brief of defendant in error in this case admits conveyances from a common grantor to have contained such references to the brick wall in question as would be inconsistent with any intention or meaning other than a recognition and contractual designation of the north line of the north wall of plaintiff's building as being the inter

vening boundary between lot 10 and lot 11, indicated by the wall as a monument and marked off upon the ground by the wall. While those conveyances do not appear in the record of the evidence, in their stipulations the parties did not use exactness of language, and evidently had in mind the history of the title admitted by both parties in this court; and if that history is as admitted in the brief of defendant in error, the common grantor by his deeds marked off the intervening boundary between the two lots, and ever since the respective separate owners apparently have treated the boundary as so established. Under the principles announced in the two cases last cited, the deeds offered by plaintiff in this case were competent, relevant and material evidence tending to prove that the parties and their predecessors by deed and otherwise had treated the north line of the north wall of plaintiff's building as indicative of the intervening boundary; and, in connection with the actions of the parties, particularly in connection with the reconstruction of the wall at the time it burned without claim by the owner of lot 10 of any interest in the ground under the wall, were admissible for the purpose of establishing acquiescence by estoppel. In view of the fact that the stipulation was that the title to the wall was not in controversy, but did not cover how it was owned, the deeds were also admissible as tending to establish that both parties owned interests in the wall, and to establish incidental rights in either of them to have the wall maintained as it existed. It was prejudicial error to exclude the same.

Defendant says that the parties and their predecessors merely made a mistake in their deeds and actions, through ignorance that the building actually encroached on lot 10. The title deeds contained elements to be considered in determining whether or not there was a mistake, and the nature of any such mistake as being or not being error as to the exact location of the building as related to lots as originally platted or merely a mistake in the letter of their deeds in not more clearly expressing intent not to convey land actually located beneath the building regardless of the lot numbers; and would have contained competent and material proof, when considered as a whole, whether grantors intended, and grantees recognized, that the deeds actually conveyed the lots as originally platted, or as only that part of lots 9 and 10, which the parties perceived and knew to be located north of the north wall of plaintiff's building; and whether thus resulted a change in boundary.

This court should not be understood as approving or disapproving the claims of plaintiff in the causes of action in plaintiff's original petition, which was dismissed by plaintiff without prejudice. Neither should this opinion be construed as prejudicing any right which may exist in either party (who may own an easement or interest in the wall of the hotel building without express title to the ground thereunder) to easement rights in the ground for enjoyment of his rights, if any, in the wall. This court does not pass upon whether such implied easement may, could or does exist, nor its extent, for the reason that the present record does not show clearly enough just what rights the respective parties may have in the wall.

It is not necessary for this court to decide other contentions than those above determined. This court should not render judgment on the motion of plaintiff because of incompleteness of the evidence and the fact that if the deeds, offered by plaintiff and not received in evidence, had been admitted, this might have made a difference in the trial on the part of both parties.

The judgment of this court is that the order of the district court denying plaintiff's motion for a new trial, and the judgment of the lower court, be reversed and the cause remanded to the lower court for a new trial.

The Supreme Court acknowledges the aid of Attorneys Hunter L. Johnson, A. J. Biddison, and R. G. Lowe in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Johnson and approved by Mr. Biddison and Mr. Lowe, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.