LAKE, for Use and Benefit of BENTON et al. v. CROSSER et al.

No. 33121. Feb. 21, 1950.
Rehearing Denied April 4, 1950.

*216 P. 2d 583.*

Looper & Sturdevant, of Oklahoma City, for plaintiffs in error.

Clarence Tankersley, of Shawnee, for defendants in error.

DAVISON, C.J. This is an action for ejectment and to quiet title to a 35-acre tract of land in Pottawatomie county, Oklahoma, brought by Ernest R. Lake, for the use and benefit of his grantees, Lola E. Benton and Gustava R. Rash. The case was tried to a jury, resulting in a verdict and judgment for defendants. The facts are simple and present one question for

determination, i. e.: the location of the boundary line between adjoining land-owners.

On January 3, 1929, while the owner of the southwest 40 acres in the hereinafter designated section of land in said county, the plaintiff, Ernest R. Lake, joined by his wife, conveyed to one Rufus Hicks the:

"West half (W 1/2) of the Southwest quarter (SW 1/4) of the Southwest quarter (SW 1/4) of the Southwest quarter (SW 1/4) of section eight (8) Township eleven (11) North, range two (2) East containing 5 acres."

This 5-acre tract was bounded on the south and west by public roads, but, at the time of the above conveyance, the north and east boundaries were unmarked. As a witness at the trial, the plaintiff testified as follows:

"Q. At the time you sold that five acres, was there a fence around the five acres, separating it from the balance of your forty acres? A. No; we had to establish that line. Q. Sir? A. We measured it out ourselves and put the fence. Q. When, now, was that with reference to the time it was bought? Was it afterwards or before? A. Somewhere in the next year; maybe in the summer. I don't remember exactly about it. Q. At the time that fence was built in 1929, or the year after it was bought, tell what was said, if anything, at the time it was built. A. Well, I sold to Rufus—Q. That was Rufus Hicks? A. Yes; I sold to him, and we didn't want to get the surveyor out there, and just got a tapeline and measured it off ourselves, 330 and 660 feet, and he wanted to start from the fence line and I wanted to start from the middle of the road, and we argued about it, and he said he wouldn't have any room there. . . ."

The fence was then built along the line so established, which enclosed a strip of ground, approximately 28 feet in width, outside the north and east boundary lines of said 5 acres, as surveyed and marked by a surveyor shortly before the institution of this action, which was brought for the sole purpose of determining and quieting the title to this strip of land.

The said Rufus Hicks and his wife conveyed said property to Tom Michael, who in turn conveyed to Hermie Crosser, both of said deeds describing the land practically the same as the above-quoted description except that there followed the description, the phase "containing five acres, more or less." Hermie Crosser died in 1942 leaving his wife and seven children who are the defendants in this action. Rufus Hicks went into possession of this 5-acre tract of land including the 28-foot strip and he and his successors in title occupied the same at all times thereafter and were still occupying and using said strip of ground at the time this action was filed, just four days short of 15 years after the date of the deed from plaintiff to Hicks. Mrs. Crosser had an orchard and garden on the 28-foot strip at the time suit was filed.

After the land was conveyed to Hicks and the fence was built, nothing was said or done about it, nor was it questioned by either party as being the boundary line, until November, 1942, when plaintiff had the property surveyed, which survey placed the east and north boundary lines 28 feet inside defendants' fence. The plaintiff testified that, at that time, he told Mrs. Crosser the fence was only a temporary one and he wanted it moved. Her testimony was that he said nothing about it until shortly before filing suit.

On December 7, 1943, plaintiff conveyed to the above-named Benton and Rash the entire 40 acres less "five acres described as the west half of the southwest quarter of the southwest quarter of the southwest quarter." On December 22, 1943, plaintiff had another survey made and on December 31, 1943, he filed this action.

There are many reported cases and numerous annotations dealing with the question of the establishment of the boundary line between adjoining land-

584

owners, irrespective of the exact description contained in the conveyances. Although the reasoning varies in different jurisdictions, in the main, these cases reach the same general conclusion. One of two general situations exists in each of these cases, i. e.: where the boundary line is acquiesced in by the adjoining landowners but one or both of said owners do not actively participate in its establishment; and where the establishment or marking of the boundary line is the result of the actions of both parties. Mere acquiescence, which is the distinguishing feature of the first mentioned category, usually must exist for a period of time "equal to that fixed by the statute of limitations." Thompson on Real Property (Perm. Ed.) sec. 3308. Exemplary of this class of cases are those of Midland Valley R. Co. v. Imler et al., 130 Okla. 79, 262 P. 1067, 69 A.L.R. 1404; Lewis v. Smith, 187 Okla. 404, 103 P. 2d 512, and Cornelison v. Flanagan et al., 198 Okla. 593, 180 P. 2d 823.

The latter category above may be subdivided into two groups of cases, namely: First, those wherein both adjoining owners without any agreement as to its effect participate in marking what they think is the exact boundary line described in their deeds but a mistake is made as to the location; and, second, those wherein the exact location is unknown but the owners mutually agree on the location of their boundary line though it may vary from the description in their conveyances. The case of Reynolds v. Wall, 181 Okla. 110, 72 P. 2d 505, 113 A.L.R. 417, falls clearly within the first subdivision of this category and the length of time of occupation of the respective tracts by their individual owners is of no importance. Since there is no agreement between them that the line marked shall constitute the boundary, nor assertion on the part of one and acquiescence on the part of the other that such line is the boundary, irrespective of the true location as described in their deeds, there is no permanent establishment of it as a boundary line,

either on the theory of executed parol agreement or of estoppel. Since the use is permissive no rights are obtained by prescription as in the case of Johnson v. Whelan et al., 186 Okla. 511, 98 P. 2d 1103. The case at bar falls within the second subdivision of this category.

Here, the plaintiff and the defendants' remote grantor personally measured the 5-acre tract conveyed and established the boundary lines. Plaintiff's own testimony negatives any idea of a mistake on his part sufficient to bring it within the rule applied in the Reynolds case, supra. The verdict of the jury, which was reasonably supported by the evidence, makes it a determined fact that the parties agreed that the line located and marked by them and upon which the fence was built and maintained should constitute the actual boundary line between the two properties.

The rule applicable in such cases is stated by the Michigan court in the following language:

"It has been held very generally, that when there has been an honest difficulty in determining the lines between two neighboring proprietors, and they have actually agreed by parol upon a certain boundary as the true one, and have occupied accordingly with visible monuments or divisions, the agreement long acquiesced in shall not be disturbed, although the time has not been sufficient to establish an adverse possession." Smith v. Hamilton, 20 Mich. 433.

The facts in the instant case are somewhat stronger than those in the Michigan case above in that here the agreement was between grantor and grantee, while there, it was between persons who stood only in the relationship of adjoining landowners. In Tiffany on Real Property (3rd Ed.) §655, it is said:

"Not infrequently reference is made to the 'practical location,' by the parties to a conveyance, of the boundary or boundaries referred to therein. This

expression refers to a designation of the line by agreement between the grantee and the grantor, the latter retaining the adjoining land, followed by possession in accordance therewith . . . . Where this location is accepted and acquiesced in, it is the true location and binding, without regard to the lapse of time."

A very similar situation was heretofore before this court in the case of Roetzel v. Rusch, 172 Okla. 465, 45 P. 2d 518. In that case, the owner of four adjacent town lots constructed a hotel building on the two corner lots. Because of a mistake of the surveyor, the building encroached about 1½ feet on the inside lots, according to the official plat of the town. Subsequently, the common owner of the four lots conveyed the two inside lots to the predecessor in title of one Rusch. Later he conveyed the two corner lots to Roetzel, who, as plaintiff, brought suit to quiet title. Rusch filed an answer and cross-petition, alleging the encroachment and seeking ejectment and a decree quieting his title. The cross-petition was filed nine days prior to the expiration of 15 years from the date of the first conveyance. Judgment was for cross-petitioner, holding the description contained in the deeds was conclusive and excluding testimony to the effect that, if the descriptions in the deeds varied with that marked on the ground by the wall of the building, the latter constituted the boundary because of its establishment and acquiescence in by adjoining owners. In reversing the holding of the trial court, this court adopted and relied upon the following statement of law, contained in the case of Herse et al. v. Mazza et al., 100 App. Div. 59, 91 N. Y. S. 778, to wit:

"Where adjoining owners took their conveyances from a common grantor with reference to a boundary line he had located on the ground, the deeds describing the tracts as certain lots in a block, the location was, irrespective of lapse of time, binding on the owners and those claiming under them."

In the Roetzel case, the boundary line was marked prior to the execution of either deed, but in both cases (the Roetzel case and the instant case) the boundary line was marked on the ground prior to the execution of the deed to the party insisting on the conclusiveness of the description as therein contained. The claim of the other party that the boundary line as actually marked on the land is conclusive, is just as effective in either case. In the one case, it is sustained as expressing the intent of the grantor at the time of the execution of the deed. In the other, it is sustained as being a subsequent executed parol agreement. In neither case is it necessary for the 15-year statute of limitation to expire, as in the case of acquiescence alone.

Although determined to be outside its application, the case of Reynolds v. Wall, supra, recognizes and quotes the rule in such cases, as follows:

" 'A practical location not induced by fraud or mistake will conclude the parties and their privies, although it may subsequently, after long acquiescence, be ascertained to vary from the course called for in the deed. . . .' "

The rule is applicable in the instant case.

The contention of plaintiff in error that the trial court erred in refusing to give certain requested instructions and in giving other instructions, objected to at the time, is founded upon the argument that the law applicable to the facts is otherwise than as stated in this opinion. We find no merit in this contention. In the absence of a request for more exhaustive instructions, in harmony with the governing rules of law, those given by the trial court adequately and fairly covered the points at issue.

The verdict of the jury was based upon competent evidence and the judgment thereon should be sustained, and is therefore affirmed.

WELCH, CORN, GIBSON, and JOHNSON, JJ., concur. ARNOLD, V. C. J., and LUTTRELL, HALLEY, and O'NEAL, JJ., dissent.

ARNOLD, V.C.J. (dissenting). My dissent to the majority opinion in this case is based upon what I conceive to be an erroneous conclusion arrived at by reasoning from a false premise.

The majority opinion, I think, correctly classifies authorities on boundary questions into two main categories: First, those where the boundary line is acquiesced in by the adjoining landowners but one or both of said owners do not actively participate in its establishment; second, those where the establishment or marking of the boundary line is the result of the actions of both parties. The opinion concedes that the authorities embraced by the first classification have no application to the facts in this case. The opinion then subdivides the second classification into two classes as follows: First, those wherein both adjoining owners without any agreement as to its effect participate in marking what they think is the exact boundary line described in their deeds but a mistake is made as to the location; second, those wherein the exact location is unknown but the owners mutually agree on the location of their boundary line though it may vary from the description in their conveyances.

The majority opinion then designates the second of these two subdivisions as the premise from which it reasons to its conclusion. I think the premise is false for the reason that the first of these two classifications fits the facts disclosed by this record more exactly than does the one adopted by the majority and the application of authorities which exemplify that classification will lead to an entirely different conclusion than the one reached from the second classification as a premise.

The record in this case discloses that Lake was selling 5 acres of land and Hicks was purchasing 5 acres. There

is no dispute as to this intention of both parties. The description in the deed called for the "west half (W 1/2) of the Southwest quarter (SW 1/4) of the Southwest quarter (SW 1/4) of the Southwest quarter (SW 1/4) of section eight (8) Township eleven (11) North, range two (2) East, containing 5 acres." Both knew that this description called for a rectangular tract in the extreme southwest corner of the section. Both knew that a rectangular tract 330 feet in width by 660 feet in length would embrace 5 acres, the amount sold and purchased. There was no mistake on the part of either as to where this rectangular tract was located. They intended to measure with their tapeline a rectangular tract in the extreme southwest corner of the section which would contain exactly 5 acres as called for in the instrument of conveyance executed by one and accepted by the other. They had no agreement as to the effect of their measurement in establishing a boundary line different from that which they both knew would embrace 5 acres of land, but by mistake their measurements were made from the existing fence line around the quarter section which by a later survey is disclosed to have been 28 feet from the section line on the east and north. Thus they made an honest mistake in the location of the boundary line on two sides of the 5-acre tract. This is the exact situation described in the first subdivision of the second main classification as stated in the majority opinion.

In order to make its reasoning plausible that the second of these subdivisions is applicable in this case, the majority opinion goes back to the case of Smith v. Hamilton, 20 Mich. 433, from which is quoted this language:

"It has been held very generally, that when there has been an honest difficulty in determining the lines between two neighboring proprietors, and they have actually agreed by parol upon a certain boundary as the true one, and have occupied accordingly with visible monuments or divisions,

the agreement long acquiesced in shall not be disturbed, although the time has not been sufficient to establish an adverse possession."

In that case four or five persons owning lands adjacent to a certain quarter section line were dissatisfied with the correctness of that line as delineated by their respective boundaries and joined in having the county surveyor establish the quarter section line. His survey resulted in disclosing a considerable variation at one end of the quarter section line and thereupon the interested parties agreed that the line established by his survey should be the boundary line between their properties and their enclosures were accordingly so placed. After 19 years' acquiescence in this boundary line a grantee of one of those participating in the establishment of the surveyor's quarter section line as the proper line brought the action in ejectment to recover the small strip of land marking the difference between the old and the new lines. The decision in that case was based upon estoppel by acquiescence. The rule announced by that court in that decision, which I think is the rule applicable here, is contained in the same paragraph as the quotation in the majority opinion and is the next following sentence. It reads:

"Where the transaction has not been such as to amount merely to an honest attempt to determine a doubtful line, the authorities have not permitted an agreement to stand which would operate as a violation of the statute of frauds."

The conclusion arrived at by the majority opinion violates our statute of frauds if my contention that the first subdivision of the second main classification is the correct premise from which to determine the rights of the parties in this action. To say that Rufus Hicks, after accepting his deed with a particular description expressly conveying 5 acres of land to him, intended to take more than 5 acres, is to ascribe to him a fraudulent intent, and since fraud is never presumed we must

fairly attribute his insistence on the old fence lines around the quarter section as the starting point for their measurement of the 5 acres as an honest mistake and neither he nor his remote grantees can rely on such honest mistake as a ground for violation of the statute of frauds as is, in effect, the holding of the majority opinion, the 15-year statute not having run in this case.

It is conceded in the majority opinion that the case of Reynolds v. Wall, 181 Okla. 110, 72 P. 2d 505, correctly states the law applicable to a case falling within this second subdivision. In that case the first paragraph of the syllabus reads:

"Where two adjoining landowners mutually acquiesce for a long period of time in treating a line as the boundary between their properties, such acquiescence creates a presumption of an implied agreement or mutual consent to the establishment of said line as the true boundary line, but this presumption may be overcome by evidence that such acquiescence was founded upon mutual mistake."

The opinion in that case quotes from 9 C. J. 243, §194, as follows:

"A practical location not induced by fraud or mistake will conclude the parties and their privies, although it may subsequently, after long acquiescence, be ascertained to vary from the course called for in the deeds or grants under which the parties claimed prior to agreeing on the line; but a line run through pure mistake and ignorance is not a practical location, even though silently acquiesced in by an adjoining owner."

In Thompson on Real Property (Perm. Ed.) 3300, it is stated:

"If the divisional line is well defined and known to the parties a parol agreement fixing upon a new and different location is not binding, because it would amount to a parol conveyance of the land, contrary to the Statute of Frauds. A definite boundary whose location is known cannot be changed by parol agreement in the absence of subsequent adverse possession in ac-

cordance with the new line. Such agreement is binding only in case a boundary line has been the subject of dispute and contention and the parties with the view to settle the dispute, agree upon and settle a line between their lands, though a line may be established by acquiescence for a period equal to that fixed by the Statute of Limitations where there is no dispute about it."

There was not dispute between Lake and Hicks as to the east and north boundaries of the 5-acre tract. Both knew that two intersecting straight lines, one starting 330 feet east of the southwest corner of the section and the other starting 660 feet north of said section corner, would enclose the 5 acres of land described in the deed to Hicks. They didn't know just where these two lines would be until the measurements were made. However, in running these two lines they made the mistake of concluding that the fence on the west and south sides of the quarter section was on the section line, when, as a matter of fact, it was disclosed by a later survey that this fence line was 28 feet inside of the section line. This renders applicable the language which I have quoted from the case of Smith v. Hamilton, supra, and which language is omitted from the quotation in the majority opinion, wherein that court said:

"Where the transaction has not been such as to amount merely to an honest attempt to determine a doubtful line, the authorities have not permitted an agreement to stand which would operate as a violation of the statute of frauds."

and renders applicable the rule announced by this court in the case of Reynolds v. Wall, supra, and the rule announced in 9 C. J. and in Thompson on Real Property, both of which have been heretofore quoted.

Title by prescription not having been accomplished by the expiration of the 15 years fixed by our statute, the rule of estoppel by acquiescence has no application to the facts disclosed by this record.

In any event, this case should be reversed because of certain instructions given to the jury over the objection and exception of plaintiff, which instructions did not advise the jury as to the rules of law applicable to the situation presented. The instructions excepted to by plaintiff are 2-A and 3 and are as follows:

"No. 2-A. You are instructed that the deed from Lake to Hicks was constructive notice to Crosser as to the exact extent of the property being purchased from said Hicks; and if you find and believe from the evidence in this case that said deed did not include or intend to include the tract in question, then your verdict should be for the plaintiffs.

"No. 3. You are instructed that if you find and believe from the preponderance of the evidence in this case that the defendants wrongfully and unlawfully hold possession of the land described in the petition and sued for by plaintiffs, against the will and consent of the plaintiffs, and plaintiffs have the title and should have the possession of the said land, then your verdict should be for the plaintiffs and against the defendants.

"On the other hand, if you do not so find, or find that at the time the defendants purchased the property from Rufus Hicks as shown by the evidence, it was the intent of the parties that the tract in question should be included in the purchase by the defendants, then your verdict should be in favor of the defendants and against the plaintiffs."

In neither of these instructions is the jury given any rule for its guidance in determining the effect of the facts which it might find from the evidence under rules of law applicable thereto. The jury was left at liberty to determine for itself what the law is upon their determination of the facts. The case was not tried nor presented to the jury on the theory of the majority opinion.

For the failure of the trial court in advising the jury as to the law applicable and because of the conflict and

confusion of instructions 2-A and 3, the judgment should be in any event reversed and the cause remanded, with directions to grant plaintiff a new trial.