KEEL et ux. v. COVEY et al.

No. 34474.   March 4, 1952.

*241 P. 2d 954.*

Gilliland, Ogden, Withington, Shirk & Vaught, by John B. Ogden, Oklahoma City, for plaintiffs in error.

Whitten & Whitten, Joe W. Whitten, and Hal S. Whitten, Oklahoma City, for defendants in error.

PER CURIAM.   This action was instituted in the district court of Oklahoma county, on the 1st day of October, 1948, by L. D. Keel and Jane Keel, plaintiffs, against Nola J. Covey and Garland W. Bennett, defendants. Plaintiffs allege that they are the owners of the south 39.5 feet of lots 18, 19 and 20 in block G, Oak Park Addition to Oklahoma City, Oklahoma; that of said land, the south 39.5 feet of lots 19 and 20, and the south 39.5 feet of the west 5 feet of lot 18, were acquired by warranty deed on August 29, 1946, from Robert H. Warren, Jr., et ux., and that the south 39.5 feet of the east 20 feet of lot 18 was acquired by adverse possession, and plaintiffs ask that the title be quieted as against the defendants. They pray for other equitable relief, including injunction. Temporary restraining order was issued against the defendants to prevent them from fencing this tract, or interfering with the plaintiffs' use thereof.

For answer and cross-petition the defendants set up that Garland W. Bennett is a tenant and in possession of the east 20 feet of lot 18; that defendant Nola J. Covey is the owner thereof. They deny that the plaintiffs have any interest in the disputed tract and plead that plaintiffs have clouded their title and for damages.  By amended cross-petition, defendant Nola J. Covey itemizes her damages as $250 expenses incurred for attorney fees and $500 punitive damages, and alleges malicious and wrongful clouding of title.

The plaintiffs filed a special demurrer in the nature of a motion to strike that portion of the amended petition which asks for $250 for expenses in employing attorneys.  This was overruled with exceptions.

By agreement the case was tried without the intervention of a jury. During the pendency of the trial, plaintiffs verbally amended their petition to

plead estoppel against the defendants from questioning a certain old fence as being the agreed boundary line. A survey showed it not to be the actual boundary line.

Robert H. Warren, Jr., testified, in substance: That he and his father-in-law, Homer Caldwell, looked this place over before buying it and "considered" this old fence as being the true property line; otherwise, they would not have purchased it. But no one so represented it to be the true property line . They, in turn, sold the property to Mr. and Mrs. Keel but the disputed tract was not included within the description in the deed. Mr. J. T. Caskey's widow testified that her husband bought some property consisting of four lots with four houses thereon, in 1930. A certain fence, as shown in the exhibits, and which is referred to as the "old fence," was there in 1930, and that "we all had our clothes lines there." She supposed that the old fence was the true line. She testified that four families all used the old fence and used the plot in question as their back yard. Called by plaintiffs, Nola J. Covey testified that she acquired the property through inheritance from her brother in December, 1947, some one year and four months after the Keels had purchased their land. Later, she again testified, on call by plaintiffs, that neither she nor her brother had fenced the disputed tract although she herself wished to do so.

L. D. Keel testified that he bought the property through a real estate man who told him the old fence was the true line and that otherwise he would not have bought it as he did not want a place with such a small back yard. He, however, never talked with Mr. Warren about this, neither did he survey the land. He had never discussed the matter with the defendants or their predecessors in title. He judges that the back yard would be about two feet deep should the plaintiffs prevail.

It was stipulated that if "Mr. Waters" (in the chain of title by deed to him and from him in 1946) were present, he would say that he regarded this old fence line as being the true property line.

Jane Keel's testimony was similar to that of her husband except she contends that they talked with the vendor, Warren.

Phil E. Daugherty testified that he owned this property in 1935 and had possession of the disputed strip until the summer of 1936. Mr. Caskey showed him the property line and there was never any question between them concerning the line. He thinks that the "old fence" was put up after he moved away. He put up a fence of his own to keep others from using this back yard, and kept up the disputed tract and removed the chicken pens and fence from it. He sold the Covey property to a Mr. Prince. In his opinion the back yard of the plaintiffs' property, should defendants prevail, would be about six feet deep.

At the close of the evidence, the defendant demurred and the demurrer was overruled. We believe the demurrer should have been sustained. Even if the old fence had been there since 1930, the use of the strip of land leading up to the old fence is not shown to have been either exclusive, hostile or continuous. And there is no element of estoppel as against the defendants shown in the plaintiffs' evidence.

On behalf of the defendants, Laverne E. Moore testified that he moved out of the Covey property in 1935; that he used the disputed tract "whenever I wanted to," and other neighbors did the same. Some trouble came up over some tenants by the name of Harris, who occupied the Keel property, but this witness agreed to permit Mr. Harris to put a garden on the disputed strip.

Garland W. Bennett, the defendant-tenant, testified that he had the use of the disputed property until restraining order was issued herein; that Mr. Harris, former tenant in plaintiffs'

house, got permission from him to use the clothes line on the disputed land. This witness would have paid $5,250 for the Covey property in 1948, but would give only $500 less than that now because of the reduction in property values.

Nola J. Covey testified in her own behalf that she got title to the east 20 feet of lot 18 and all of lot 17, at which time she had the property surveyed. She testified to paying $250 to her attorneys to clear her title of the cloud created by plaintiffs' lawsuit; and an attorney testified that a reasonable fee would be $350.

In re-direct, Mrs. Keel testified that Mr. Bennett never used the yard in dispute until this lawsuit started.

Judgment was entered for the defendants on all issues finding that defendant had paid a reasonable attorney's fee of $250 and that by reason of the malicious and wrongful acts of the plaintiffs herein, said defendant Nola J. Covey is entitled to judgment for actual damages over and against the plaintiffs herein the sum of $250. Plaintiffs were allowed to remain in possession under supersedeas bond of $750, conditioned upon satisfying the judgment, costs and additional damages caused by the appeal, which bond was made and approved.

In their appeal, the plaintiffs assert (1) title by prescription of the disputed strip; (2) estoppel as against the defendants for the reason that for 20 years the defendants permitted the old fence to be regarded as the true boundary line; (3) that the judgment of $250 for damages for attorney's fees was not justified under the facts and the law.

While there is some dispute in the testimony as to how long the old fence had been in place, the preponderance of the testimony seems in favor of the defendants on this issue. Most certainly there is sufficient evidence upon which such a finding could have been made by the court, as the judge of the facts.

There can be no valid contention that the plaintiffs have title by prescription.

J. T. Caskey owned all of lots 17, 18, 19 and 20 until 1935. This case was instituted October 1, 1948. Thus, under any theory, adverse possession could only have been for thirteen years instead of fifteen years as required by statute. Plaintiffs could not have title by prescription under Title 60 O.S.A. §§331, 332 and 333.

As none of the defendants had anything to do with inducing the plaintiffs to purchase their premises, and made no representations to them relative to the property line, there can be no element of estoppel. Coats v. Riley, 154 Okla. 291, 7 P. 2d 644. Neither the plaintiffs nor any of their predecessors in title had made any effort to fence the disputed plot to their exclusive possession.

Plaintiffs cite the case of Lake, for Use and Benefit of Benton, v. Crosser, 202 Okla. 582, 216 P. 2d 583, but this case is not in point because therein the boundary line was agreed upon by two neighbors, mutually pitching the line by a monument, following this agreement by long acquiescence. We quote from said case as follows:

"There are many reported cases and numerous annotations dealing with the question of the establishment of the boundary line between adjoining landowners, irrespective of the exact description contained in the conveyances. Although the reasoning varies in different jurisdictions, in the main, these cases reach the same general conclusion. One of two general situations exists in each of these cases, i.e.: where the boundary line is acquiesced in by the adjoining landowners but one or both by said owners do not actively participate in its establishment; and where the establishment or marking of the boundary line is the result of the actions of both parties. Mere acquiescence, which is the distinguishing feature of the first mentioned category, usually must exist for a period of time 'equal to that fixed by the statute of limitations.' Thompson on Real Property (Perm. Ed.) sec. 3308. Exemplary

of this class of cases are those of Midland Valley R. Co. v. Imler et al., 130 Okla. 79, 262 P. 1067, 69 A.L.R. 1404; Lewis v. Smith, 187 Okla. 404, 103 P. 2d 512, and Cornelison v. Flanagan et al., 198 Okla. 593, 180 P. 2d 823."

In the case at bar the testimony conclusively shows that the questioned plot had been used at the same time by the occupants of four houses.

Neither is the cited case of Roetzel v. Rusch, 172 Okla. 465, 45 P. 2d 518, controlling, as in that case the original owner of the adjoining lots, four in number, erected a hotel on the two corner lots, which building encroached one and one-half feet on the inside lots, due to error of the surveyor. In the present case we have no building encroachment; and a dispute of fact over the length of time that the old fence had been in place has been settled by the trier of the facts in favor of the defendants. In this respect there was competent evidence to sustain the trial court.

The remaining question presented by the record is the allowance of an attorney's fee in favor of the cross-petitioner and against the original plaintiff.

In her amendment to answer and cross-petition defendant states: Cross-petitioner has suffered loss and expense in attorney's fee in the sum of $250. She then prays for the recovery of the sum of $500 as punitive damages. By an examination of the journal entry of judgment we find the following recitation: "that the defendant Nola J. Covey is now the record title owner of said land; that she has been damaged by reason of the plaintiffs' suit and the granting of the restraining order; that she lost three days work, that counsel for said defendant has been paid the sum of $250 attorney's fees which is a reasonable and proper expense for defense of this case." This quoted provision of the journal entry is the only finding of fact with reference to the $250 item. In the last paragraph of the journal entry it is recited that the defendant and cross-petitioner shall have and recover actual damages from the plaintiff in the sum of $250.

As no finding was made as to any damages, save and except that defendant and cross-petitioner's counsel has been paid the sum of $250 attorney's fee which the court finds reasonable, we cannot agree with defendant and cross-petitioner's contention first advanced on appeal that she did not pray for attorney's fee in her cross-petition; and that the judgment in her favor for the sum of $250 was based on general damages as distinguished from attorney's fees. To hold otherwise we would have to sustain the item of $250 without any proof to support it. Cross-petitioner testified to but one other element of damage and that was the three days lost in attending to the defense of her lawsuit.

Cross-petitioner relies on Eggers v. Olson, 104 Okla. 297, 231 P. 483, in support of the allowance of the $250 item. As we read this case all this court decided was that, in an action to quiet title against one who has knowingly and willfully and without proper regard for the rights of the legal owner clouded the title, plaintiff was entitled to actual and punitive damages by virtue of art. 1, c. 36, Com. Stat. 1921 (§5975), now Title 23, §9, O. S. 1951, which statute permits recovery for breach of an obligation, not arising on contract, when the adverse party has been guilty of oppression or fraud, or malice actual or presumed. In the Eggers case the court did not have the question of the allowance of an attorney's fee before it. As shown by the opinion the court stated that the action of the trial court in striking the item of attorney's fee as well as expense in attendance of court was not before it for decision.

Cross-petitioner also urges in support of the judgment for the $250 item the case of Wilkerson et al. v. Wasson, 110 Okla. 66, 235 P. 206. The parties in that case had in a trade exchanged deeds to their respective properties consisting of farms and city properties.

After plaintiff had fully complied with his contract of exchange, defendants claimed plaintiff had agreed as a part of the deal to convey to defendants an undivided one-third interest in the minerals on a tract formally owned by plaintiff. Plaintiff denied he so agreed, whereupon defendant placed an affidavit on the records of the register of deeds, asserting ownership in the minerals. Plaintiff's suit was one to quiet title and for the removal of the affidavit of record. The court found the placing of the affidavit of record was a willful and malicious act and in the court's judgment allowed plaintiff damages in the sum of $250. The court's syllabus holds that where the affidavit was wrongfully and willfully filed for the purpose of clouding plaintiff's title, plaintiff could recover all damages and expense incurred in getting the cloud removed. Defendant contended the allowance of $250 was not as damages but as an attorney fee. Answering that contention this court stated:

"There is nothing in the judgment of the court that justifies this contention. The judgment as contained in the journal entry is for $250 damages. It does not attempt to detail for what the damages are allowed."

But as we have indicated, it is shown by the journal entry of judgment in the instant case that the court made no findings as to general damages and the only finding of fact is "that counsel for said defendant has been paid the sum of $250 attorney's fees which is a reasonable and proper expense for defense of this case."

In 14 American Jurisprudence, Costs, §63, p. 38, the author states: The right to recover attorneys' fees from one's opponent in litigation as a part of the costs thereof does not exist at common law. Such an item of expense is not allowable in the absence of a statute or of some agreement expressly authorizing the taxing of attorneys' fees in addition to the ordinary statutory costs.

By reference to our statute it will be seen that the Legislature has spoken on the question of an allowance of attorneys' fees in certain cases.

The statute authorizes such allowances in divorce matters, foreclosure of mortgages, libel and slander, demurrage cases, unfair competition cases, usury matters, suits on warranty of titles, and many others can be noted under the index of attorneys' fee in Oklahoma Statutes of 1951, but the statute is silent on an allowance of such fees in a case which is based on a question as to who has the better legal or equitable title to a tract of land.

Under the state of the record we are of the opinion that the judgment of the trial court, insofar as it is in favor of the defendants and cross-petitioners quieting their title in the lands described, should be and it is hereby affirmed.

The judgment insofar as it made an allowance of attorneys' fee in favor of the defendants and cross-petitioners is reversed.

The judgment is affirmed in part and reversed in part.

This court acknowledges the services of Attorneys Robert J. Bell, M. O. Counts, and D. S. MacDonald Jr., who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, V. C. J., and CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.