EVANS v. BANK OF F. C. FINERTY & CO. et al.

No. 33344.  May 10, 1949.
Rehearing Denied June 14, 1949.

*207 P. 2d 272.*

Ash & Bailey, of Cordell, for plaintiff in error.

Meacham, Meacham, Meacham & Meacham, of Clinton, for defendant in error Ruby Evans.

HALLEY, J.  This action was commenced by J. W. Evans against numerous defendants, including Ruby Evans, alleging that he was the owner of and entitled to the possession of 80 acres of land in Washita county, Okla., having acquired title to this land by warranty deed dated February 4, 1936, from the defendant Ruby Evans and her former husband, W. W. Evans. He alleged that all of the defendants claimed some in-

terest in the land involved, and that Ruby Evans was in actual possession. He prayed that the defendants be required to set up whatever claim they had, that he be granted a judgment for possession, and that his title be quieted.

Ruby Evans alone answered. She pleaded, by general denial, limitations, and that the deed to plaintiff by her and her former husband was not, in fact, a deed, but a mortgage to secure their indebtedness to J. W. Evans, and that such sum had already been paid. She alleged that J. W. Evans was estopped to contend that the deed was in fact a deed, vesting title in him.

Ruby Evans filed an amended answer alleging further that she and her former husband had owned the land involved for many years prior to February 4, 1936, and that in 1945 she and her husband were divorced, and that by the divorce decree she was vested with title to the land in question. She re-alleged that the deed by her and her former husband to J. W. Evans did not vest title in him, but only the naked legal title, and that the divorce decree vested good title in her. She further alleged that J. W. Evans was estopped to maintain this action because he knew of and acquiesced in the divorce decree, a copy of which was attached to her amended petition.

Ruby Evans later filed an amendment to her amended answer, in which she set up that if she did sign the deed to J. W. Evans in 1936, she did it for his convenience, that it was not a conveyance in fact, and that if she signed it she did so upon the oral statement of J. W. Evans that if she signed the deed, the land would be given back to her or her husband, and that J. W. Evans orally advised her that the land would always be the home of herself and her husband, and that they relied upon such oral statement, and would not have executed the deed except for such statement.

J. W. Evans replied by general denial, but set out that the possession of the land by Ruby Evans and her former husband was that of tenants, since the deed to him in February 1936. He further alleged that as a consideration for the deed to him, he assumed and paid $2,541.05 to the Aetna Life Insurance Company, due and secured by mortgage against the 80 acres involved, and since the deed to him had paid $295.28 in taxes, no part of which had been repaid to him by Ruby Evans or any other person. J. W. Evans reaffirmed that the deed to him was absolute, but that if it should be held to be a mortgage, he was entitled to have the same foreclosed and the land sold, and the proceeds applied to the above mentioned obligations to him. He prayed for such procedure, should the court decree the deed to him to be a mortgage.

The deed to J. W. Evans was admitted in evidence, and it had been duly recorded. He testified that his son and Ruby Evans could not meet the payments on the debt due the Aetna Life Insurance Company, and secured by mortgage, and that he agreed to secure a loan upon the 80 acres here involved and an additional 80 acres owned by him, to pay the Aetna loan. That upon delivery of the deed to him, he secured the loan, paid off the Aetna loan, and for their equity agreed that they could occupy the land for a period of three years, rent-free. He testified that after the three years expired, they paid him rent up to the time when Ruby Evans and her husband were divorced, but that he had been paid no part of the money advanced by him to take up their obligation, or for the taxes he had paid or improvements made by him. In 1936, he executed an oil and gas lease for a term of ten years, and received $80 annually as delay rentals.

J. W. Evans did testify that his son had paid him some money, mostly rent, but he was uncertain as to the amounts received; that he had made

no demand upon his son and his wife, because they did not have the money with which to pay.

Ruby Evans testified in her own behalf that the agreement between herself and her husband and J. W. Evans was oral, and to the effect that the land would be reconveyed to them when they repaid J. W. Evans for the money advanced by him to meet their obligations. She then testified that an agreement to the effect that, upon repayment, J. W. Evans would reconvey the land to them, was in fact put into writing. She was asked if she had a copy of the written agreement and she replied in the negative. No further questions on this point were asked.

The bank deposit slips, introduced in evidence by agreement, covering the period from December 7, 1939, to September 14, 1946, clearly show that most of the money deposited in the bank by W. W. Evans for the account of J. W. Evans was for rent. J. W. Evans had rented to W. W. Evans and wife an additional 80 acres of land, and there is nothing to show just what portion of the money deposited covered rentals for the 80 acres of land involved. There were some deposits which did not show definitely their source. W. W. Evans testified that he made no payments to J. W. Evans on the mortgage obligation, but did pay him rent annually.

The trial court simply found for the defendant Ruby Evans and rendered a judgment for her. The land involved is not mentioned; neither is the existing deed from her and her husband to J. W. Evans, the plaintiff. The finding is general and the decree is general, and covers, except in a general way, none of the controversial issues involved in the case. There was no evidence introduced and no finding or decree entered relative to the alleged claims of numerous other defendants, who did not appear.

The plaintiff in error, J. W. Evans, complains of the action of the court in striking the case from the jury docket and denying him a jury trial. Section 556, Title 12, O.S. 1941, provides that issues of fact arising in actions for the recovery of specific real property shall be tried to a jury, unless a jury trial is waived. We are not unmindful of the rule that the pleadings make up the issues to be tried and determined, whether or not such issues constitute a legal or equitable action. J. W. Evans contended in his original petition that he was the owner of the land involved, and alleged that the defendant Ruby Evans was in possession thereof. He prayed that he be granted a judgment for possession and that his title be quieted. There can be no doubt but that the action filed by J. W. Evans was in the nature of the common-law ejectment action, and the above statute expressly provides that a jury trial shall be granted unless waived. It has also been held that the right to a jury trial in actions for the specific recovery of real property is not necessarily affected by the fact that the plaintiff also seeks to have title quieted in the same action. Fitz-Gerald et al. v. Lightfoot, 180 Okla. 598, 71 P. 2d 707; International Supply Co. v. Bryan and Emery, 164 Okla. 142, 23 P. 2d 205. We think it clear that the plaintiff was entitled to a jury trial. The last case cited holds that even though the defendant sets up an equitable action as a defense, such does not change the character of the action from being one for the recovery of specific real property.

Inasmuch as this case is being reversed for failure to grant a jury trial, it is unnecessary to discuss the other questions raised in the briefs.

The judgment of the court is reversed, with instructions to grant the plaintiff in error, J. W. Evans, a new trial, and proceed in accordance with the views expressed herein.