ECKROAT v. LANDRUM.

No. 33968. June 26, 1951.

Rehearing Denied Sept. 25, 1951.

*235 P. 2d 705.*

John F. Eberle, Oklahoma City, for plaintiff in error.

Harry W. Priest and R. A. Belisle, Oklahoma City, for defendant in error.

DAVISON, J. This is an action wherein Paul H. Eckroat, as plaintiff, seeks to eject the defendant, an adjoining landowner, from an 8-or 9-inch strip of land lying along the common boundary line between their respective properties in Oklahoma City, Oklahoma, and to recover damages for its detention. The parties will be referred to as they appeared in the trial court.

Lot 15 in block 2 of S. J. Young's Addition to Oklahoma City, Oklahoma, is bounded on the south by Northwest 23rd street. It is 25 feet east and west along said street and runs back 171 feet to the alley on the north. It is bounded on the east and west by other lots in said block. The record title to the west 15 feet of this lot and to the lots west thereof was in plaintiff. The record title to the east ten feet of this lot and to the lots east thereof was in defendant. There was located upon the property of plaintiff, a brick building fronting on the sidewalk along 23rd street and extending back north 93 feet, the east wall of which was several inches west of the surveyed boundary line. This east wall of plaintiff's building continued on north as a brick wall or fence to the alley. At the alley, the east face of the wall was from 8 to 9 inches west of the surveyed line between plaintiff's and defendant's properties. A short distance to the north of the end of the building and the beginning of the fence, extending on back north 32 feet to the alley, was the west wall of a building on defendant's property. The west face of this wall was flush with and against the east face of plaintiff's brick fence. It is this 8- or 9-inch strip of ground, west of the surveyed boundary line and upon which defendant's building wall rested, that is the subject of this litigation.

Plaintiff founds his claim upon record title. Defendant relies upon adverse possession for a period of more than 15 years. The case was tried to a jury, but, at the close of the evidence, the defendant moved for a directed verdict, which motion was sustained. From the judgment rendered upon the instructed verdict, plaintiff has perfected this appeal. Whether or not the trial court erred in directing a verdict is decisive of the case.

The various situations which present themselves in cases involving disputes between adjoining landowners, as to the location of their common boundary line, are pointed out and classified in the case of Lake, etc., v. Crosser, 202 Okla. 582, 216 P. 2d 583. That case, however, turns upon a question not existing here, but the opinion distinguishes former cases cited and relied upon by the parties in the case at bar. Plaintiff, in his brief, quotes at length from the opinion in the case of Reynolds v. Wall, 181 Okla. 110, 72 P. 2d 505, 113 A.L.R. 417, wherein it was held:

"Where two adjoining landowners mutually acquiesce for a long period of time in treating a line as the boundary between their properties, such acquiescence creates a presumption of an implied agreement or mutual consent to the establishment of said line as the true boundary line but this presumption may be overcome by evidence that such acquiescence was founded upon mutual mistake."

Defendant, in his brief, is just as insistent that the instant case is governed by the rules applied in the case of Midland Valley R. Co. v. Imler, 130 Okla. 79, 262 P. 1067, 69 A.L.R. 1404, which was referred to by the trial court as authority for the order sustaining defendants' motion for directed verdict. Therein, it was held that:

"Where a partition fence has been erected and maintained for many years, and the respective property owners have regarded and acquiesced in the line marked by such partition fence as the boundary line between their respective properties, and, where the property has been occupied and valuable improvements placed thereon upon the assumption by both parties that such fence does mark the correct boundary line, in a suit in equity the parties will be bound by such acquiescence and assumption."

This last-cited case was followed in those of Lewis v. Smith, 187 Okla. 404, 103 P. 2d 512, and Cornelison v. Flanagan, 198 Okla. 593, 180 P. 2d 823, among others.

Which of these rules is applicable and controlling in the case under consideration depends upon the facts proven. The record discloses testimony of both parties, of former occupants and of predecessors in title, together with that of surveyors as to the location of buildings and improvements. Defendant testified that he purchased his property in April, 1918. At that time, there was a big two or three story house on what is now plaintiff's property, which faced west and the back of which was within a few inches of the common boundary line. At the north corner of this house, next to this boundary line, was attached a fence which ran north to the alley. Defendant used all the property east of the fence for a chicken yard, then as a garden and flower bed. In 1932, defendant tore down the fence, and, in the same location, built a picket fence. In 1934, plaintiff's grantor built the brick building and wall above described. The building contractor employed for the construction thereof removed the picket fence and so constructed the building and fence that the east face was on the same line formerly occupied by the picket fence. Defendant continued to use the property on the east of, and up to the brick wall. Defendant further testified that about the middle of March, 1946, some four months prior to the institution of this action, he learned for the first time from the surveyors that the exact boundary line, fixed by the deeds, was different from that on which the fence had been and which was later the east face of plaintiff's building and wall.

A Mr. Johnson testified for plaintiff that in September, 1931, he acquired

the property, now owned by the plaintiff, with his grantors reserving the big 2 ½ story house which was removed by them. In 1934, he built the brick building and wall along the presently disputed boundary line. He sent the surveyor out to locate the line and instructed the contractor to stay six inches or more inside the boundary in construction of the building. The space between the building and the surveyed boundary was useful and necessary for the full enjoyment of the building and he in no way ever intended to or did abandon any part of it. That the defendant constructed the building on his property in 1939. That he, Johnson, did not notice that the building was flush with the east face of the brick wall. That he did not know until later that an opening or archway had been cut through the brick wall as an entrance into defendant's building. That such building was built for, and occupied as, additional space, by the Stevens Cleaning Shop, a tenant of a part of Johnson's building. That he paid no attention to it. That neither he nor defendant ever made any complaint to the other about the boundary line or anything else. That he sold the property to plaintiff in 1945.

The plaintiff testified that he was a partner in the Stevens Cleaning Shop and had been for about five years. That when he purchased the property in 1945, the cleaning company was occupying a part of the building he purchased, and also, under lease to one of the partners, was occupying defendant's building. Shortly after the survey in 1946, the defendant went to the office of plaintiff and told him that his (defendant's) building extended over onto plaintiff's property approximately 9 inches. Together they personally inspected the encroachment. Plaintiff knew nothing of defendant claiming any property by prescription until the answer was filed in the instant case. Previous to this time, 1946, plaintiff had no knowledge that defendant's building was not exactly on the line.

Other witnesses testified but this, in brief, constitutes the general outline of the evidence upon which the trial court directed a verdict for defendant. To apply the rules of law set out above to this evidence, it first becomes necessary to determine the intention of the parties, relative to the ownership of the disputed strip of land, which is a question of fact. This, being primarily an action to recover possession of real estate, although it is also sought to quiet the title thereto, is in the nature of a common-law ejectment action, and the plaintiff was entitled to a trial by jury as provided by 12 O.S. 1941 §556. Evans v. Bank of F. C. Finerty & Co., 201 Okla. 485, 207 P. 2d 272.

Being an action at law triable to a jury, it was the duty of the trial court, when ruling on the motion for a directed verdict, to disregard all evidence unfavorable to plaintiff and give him the benefit of all legitimate inferences.

"A motion for a directed verdict admits all facts fairly or reasonably inferable or deducible from the adverse party's evidence, and, where there is a controverted question of material facts, it is error to direct a verdict." Keller v. Tracy, 183 Okla. 463, 82 P. 2d 1046; Larkins-Warr Trust v. Watchorn Petroleum Co., 198 Okla. 12, 174 P. 2d 589.

The citations to a large number of earlier cases, wherein this court adhered to this universally accepted rule, are collected in the first above-cited case. The interpretation of the intention of the parties from all the evidence controls the outcome of this litigation and constituted a question of fact which the trial court should have left to the jury for determination. It was error to direct the verdict.

The judgment is reversed and the cause remanded for a new trial.

CORN, HALLEY, JOHNSON, and O'NEAL, JJ., concur. ARNOLD, C. J., LUTTRELL, V. C. J., and WELCH and GIBSON, JJ., dissent.