## LEWIS v. SMITH.

No. 29500. May 21, 1940.

Rehearing Denied June 11, 1940.

*103 P. 2d 512.*

Thos. Hudgens, of Weatherford, for plaintiff in error.

Meacham, Meacham & Meacham, of Clinton, for defendant in error.

BAYLESS, C. J. C. J. Lewis appeals from a judgment of the district court of Washita county in favor of Ray Smith. Lewis instituted the action for the purpose of enjoining Smith from interfering with a fence existing between their respective lands. Lewis owned the southeast quarter and Smith the northeast quarter. Smith broadened the issues by asserting ownership and right of possession of a strip of land south of the fence, to which claim Lewis joined issue by asserting ownership of all land south of the fence. So, the suit turned into an action to quiet title, with the matter of injunctive relief becoming incidental.

In 1911, Charles and Sam Smith owned two quarter sections as a unit. They divided the land that year, Charles, the father of Ray, taking the north tract, and Sam, the remote grantor of Lewis, taking the south tract. In that year they erected a fence on the line running east and west across the half section, and this fence, as maintained and repaired by both men and their successors, has re-

mained to the time of this litigation. In December, 1938, Smith caused a legal survey to be made, at which time it was learned that the line of the fence did not correspond to the true boundary line dividing the section east and west according to government survey. Actually the fence line on the east side began about two feet north of the true line, and as it proceeded westerly it veered to the north until it crossed the west boundary line about 126 feet north of the true line. Thus is involved a wedge shaped tract one-half mile long, two feet wide at one end and 126 feet wide at the other end. At the time the fence was first built Lewis was about eight years old, and Smith yet younger. Lewis recalls when it was built (Sam Smith, his remote grantor, being his uncle) but did not hear and does not know of his own knowledge what the intentions or agreement of Charles and Sam Smith were. Ray says he was too young to recall the building of the fence, and knows nothing of the intentions or agreements of the Smith brothers. Therefore, there was no evidence except of the erection and continued existence of the fence, and the use by the parties of the land up to their respective sides of the fence, upon which to determine the matter, and since it was not in conflict, the matter virtually resolved itself into a question of law.

The findings and judgment read in part: "and it is the opinion of the court that said fence was so located for mutual convenience," and "It is ordered * * * that plaintiff's petition for injunction be * * * denied; that defendant be * * * given possession of the parcel of land. * * *"

Lewis prefaces his argument by the following statement:

"The plaintiff contended that the conduct of the owners of the two farms in jointly building and jointly maintaining the fence and acquiescing in it as their partition fence had raised the presumption that they had agreed upon that line as their common boundary; and that if it was not on the line of the original survey, the presumption has arisen that the original line was not marked, and its location was not known to C. H. Smith and Sam Smith, and that they settled the matter by mutually agreeing upon the line where they built the fence."

This statement draws our consideration to a rather precise issue. The law covering the controversy herein is in a state of confusion, and much of the confusion in the decisions arises from a failure to keep in mind the variety of circumstances from which such litigation arises, and also arises from a tendency to treat simple factors found in these matters as independent rules for the governing of the whole of similar situations rather than matters of subordinate inquiry, the co-incidence of several of which or the sum total of all being necessary to the answer sought. See Adverse Possession, 1 Am. Jur. 879 § 151 et seq.; 2 C.J.S. 685 § 128 et seq.; Adverse Possession (Am. Dig. West) 43 (1-4), and 46 A.L.R. 792, and supplement; and also Boundaries, 11 C.J.S. 650; 8 Am. Jur. 797 § 72 et seq., and especially section 81, respecting confusion of "Agreement and Acquiescence"; 69 A.L.R. 1430, and 113 A.L.R. 421.

As pointed out above, this case must be determined without the aid of a single explanatory word or deed of the Smith brothers, except the erection and maintenance of the fence. It does not appear whether it was built by agreement to be the location of the true boundary. It does not appear that the true boundary was known or unknown to them, or that they were in disagreement respecting the true line. It does not appear whether it was run in an effort to establish a practical line to be binding, or to establish a line of convenience, not to be binding, until the true line could be located later. The court's finding that it was a line of convenience is based wholly upon speculation, for there is no substantial evidence to prove it or to permit the inference. It does not appear that either of the Smith brothers knew of the mistake, if it was a mistake instead of a deliberately established line, nor did either of the parties hereto know of the deviation between the fence line and the true line until about the time of the survey in 1938.

Since plaintiff pitches his claim to the boundary upon acquiescence, he thereby eliminates agreement in the sense of a contract and relies wholly upon the acts of the various actors. Thus we have (1) the division of a unit of land; (2) the running of a fence between the divided portions of the unit deviating from the true line as established by government survey; (3) the continued maintenance of the fence for 27 years; and (4) the use by the respective parties of the land lying on their respective sides of the fence only. Is this sufficient to establish title by acquiescence?

We think it is. In 8 Am. Jur. 802 § 80, it is said:

"It is well established that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time * * * usually the time prescribed by the statute of limitations * * * they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one."

This is virtually the language used in the statement of the rule respecting the establishment of boundary lines by acquiescence, 69 A.L.R. 1491, that is followed by an annotation of the decisions of the federal courts and of the courts of 35 states, and of Canada. Included among these decisions is that of Midland Valley R. Co. v. Imler, 130 Okla. 79, 262 P. 1067.

Among the factors considered in these decisions are: (1) what constitutes acquiescence; (2) acquiescence for many years, and the relation of the period of time to the statutes of limitation; (3) whether there is a dispute or uncertainty as to the true boundary; (4) acquiescence induced by mistake; (5) the necessity of possession up to the boundary to be established; (6) the definiteness of the line; (7) mutuality of acquiescence, and others not necessary to mention.

There seems to be a difference in the reasoning of the courts respecting what long continued acquiescence actually establishes as the legal status. Many cases hold that it is evidence of an agreement establishing the line as the true boundary (69 A.L.R. 1508 et seq.), while many others treat it as conclusive proof of its being the true line (69 A.L.R. 1515 et seq.). This diversity of views does not produce a difference in ultimate results, and in this case it is immaterial that Lewis takes the position that the facts here amount to proof of an agreement between the Smith brothers. In other words, they were dividing a 320-acre tract, owned jointly, into two 160-acre tracts, and were establishing a fence which inference causes us to suppose was some effort deliberately undertaken to mark out the extent of their respective estates.

What is acquiescence as used in this sense? It is said, acquiescence is quiescence under such circumstances that assent may be reasonably inferred from it. Lowndes v. Wicks, 69 Conn. 15, 36 Atl. 1072; Dwight v. Des Moines, 174 Iowa, 178, 156 N. W. 336; or, as stated by other authority, is knowledge that means a quiet submission or compliance to a state of facts. C. & A. Ry. Co. v. Myers, 80 Ill. App. 401; Words and Phrases (Perm. Ed.) vol. 1, 631, "Acquiesce or Acquiescence."

The Supreme Court of Iowa, in the case of Dake v. Ward, 168 Iowa, 118, 150 N. W. 50, said that acquiescence is somewhat negative in character, and this arises from the element of quiescence. In discussing the length of time necessary to establish acquiescence it said:

"Acquiescence or want of acquiescence is not alone a matter of words. It is often, if not usually, proved by inference or presumption from the conduct of the parties. * * * Words may be wanting or the proof of them impossible, but conduct of the parties during a period of * *. * years is inevitable. * * * The very reason for requiring a long period of acquiescence in order to establish it at all is that it is deemed somewhat negative in character, and that its inference can be drawn more fairly from a long period of negation than from a short one. It is readily conceivable that

a person may be dissatisfied, and yet submit and thus acquiesce."

It is sufficient to say that the cases with respect to the period of time during which acquiescence continues sufficient to establish the boundary all agree that it is sufficient if it equals the statute of limitations applicable to title by prescription.

Some of the authorities only permit the establishment of boundaries by recognition and acquiescence where the conduct of the parties arises out of and follows uncertainty or dispute over the true line, but the majority of the cases establish the better reasoned rule that dispute or uncertainty is not a prerequisite. 69 A.L.R. 1501, and the annotations appearing in 113 A.L.R. 436.

All of the cases are agreed that there must be definiteness with respect to the boundary sought to be established by acquiescence. 69 A.L.R. 1505 and 113 A.L.R. 436. Likewise, the fact that the parties possess and use the land lying on their respective sides of the fence only is looked to as recognition and knowledge of the facts. 69 A.L.R. 1504 and 113 A.L.R. 436. This is also taken as evidence of the mutuality of the acquiescence.

Neither of the parties cited Midland Valley R. Co. v. Imler, supra, which seems to be the only decision previously rendered by this court of sufficient analogy to be helpful. In that case the parties had established a fence along the supposed boundary line between the railway right of way and the city lots of Imler, and each of the parties had been active in maintaining their respective portions of this fence for a period of probably 16 or 18 years. At the time of the trial it was established by conclusive evidence that this fence gave Imler the use of about 18 inches of the railroad company's property. We held that where a partition fence has been erected and maintained for many years and has been regarded and acquiesced in by the parties as the boundary line, the parties are bound thereby although it may not have been the true boundary line between their property.

Under these authorities we think the showing made by the plaintiff in this case is sufficient to require a judgment in his favor establishing the boundary line between the properties involved as the line occupied by the fence for these 27 years.

Smith argues that no adverse possession has been shown sufficient to entitle Lewis to prevail. The many cases cited in 69 A.L.R. and 113 A.L.R., supra, and the text in Am. Jur. and C.J.S., supra, make clear the distinction between an action to establish title by prescription and an action to establish boundary lines, and especially to establish boundary lines by acquiescence. We are cited the case of White v. Saling, 185 Okla. 46, 89 P. 2d 754, as authority for this contention, but we call attention to the fact that this decision was expressly overruled in Johnson v. Whelan, 186 Okla. 511, 98 P. 2d 1103, wherein we took occasion to inquire into and discuss the authorities respecting title by prescription by encroachment in ignorance of the true boundary line. In that decision we discussed Reynolds v. Wall, 181 Okla. 110, 72 P. 2d 505; and Rocher v. Williams, 183 Okla. 221, 80 P. 2d 649, and differentiated those and similar cases involving the element of actual agreement from those cases where agreement is raised by inference as in that case and this case.

Smith also insists that there may not be a tacking of possessions for the purpose of establishing possession for a long period of time, relying upon, among other authorities, City National Bank of Duncan v. Soderburg, 171 Okla. 369, 43 P. 2d 495. The rule announced is that there may be a tacking of possessions where privity of estate exists between successive occupants under color of title, thereby inferring that possessions may not be tacked where no such privity of estate exists. However, there are authorities to the effect that privity of estate is not necessary, in the sense of color of title arising out of conveyance, as between ancestors and heirs. In other words, if the property comes by inheritance, as it did to Lewis in this case, the possession of the ancestor may be added

to that of the present holder to establish one period of possession. Lewis' father acquired possession in 1917 and died in 1926, at which time possession passed to his heirs, including plaintiff, and plaintiff's possession has continued since. We think this sufficient. 2 C.J.S. 690 § 130(d).

Smith also discusses the lack of evidence to show any dispute or uncertainty as to the true line. We think this is disposed of by the authorities heretofore cited with respect to the elements of acquiescence.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

RILEY, OSBORN, HURST, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., and CORN and GIBSON, JJ., absent.