N. D. DODDS, s/p/a Newell D.
Dodds, Appellant,

v.

Alice M. LAGAN and Richard
Gigoux, Appellees.

No. 51205.

Court of Appeals of Oklahoma,
Division No. 1.

Feb. 27, 1979.

Rehearing Denied April 10, 1979.

Certiorari Denied May 14, 1979.

Released for Publication by Order of
Court of Appeals May 17, 1979.

Field & North by Raymond D. North, Enid, for appellant.

Dennis L. Pope, Enid, for appellees.

REYNOLDS, Judge:

Appellant Dodds and Appellee Gigoux presently own adjoining property located in the Southeast Quarter of Section 29, Township 23 North, Range 4 West of the Indian Meridian, Garfield County, Oklahoma. The location of the true boundary between the properties has become a matter of dispute, resulting in the present quiet title action. The trial court, sitting without jury, denied appellant any relief and entered judgment in favor of appellees on the theory of res judicata.

The record in the cause asserted as a former adjudication discloses that Case No. 31,359 of Garfield County was an action by the Y.M.C.A. of Enid, Oklahoma, appellant's immediate predecessor in title, to quiet title to the property it acquired by devise from Mr. O. A. Triplett. In the Journal Entry filed May 31, 1967, the court quieted title to the Y.M.C.A. property at a point beginning 1305.76 feet north of the southeast corner of Section 29 and extending west along the south line of the North Half of the Southeast Quarter. No appeal was taken from this judgment.

The court had before it two conflicting deed descriptions. The Y.M.C.A.'s deed described its property as beginning at a point 1305.76 feet north of the southeast corner of Section 29, then extending west 2000.51 feet to the railroad right-of-way. The La-

gan's deed described their property as extending 80 rods (1320 feet) north of the same southeast corner of Section 29 and then extending west 60 rods (990 feet). It was therefore a question of fact for the court to determine the exact identity and location of the plaintiff's property.

Dodds acquired title to the Y.M.C.A.'s tract of land in 1967, and immediately took possession of the premises. From 1967–1976 Dodds farmed the land north of an old fence line. From 1901 until the late 1940's there was a dilapidated barbed wire fence separating the Dodds' property from the Lagans. Some time in the late 1940's the fence was removed. The course of the fence line is still visible. One end of this fence line was on the eastern edge of Section 29 marked by a couple of trees and a two foot high drainage dam. The other end was approximately 60 rods west of the east section line, at the corner post of a presently existing fence line that runs west from that point to the railroad right-of-way.

In December 1975, appellee Lagan contracted to sell the Lagan property to appellee Gigoux. Gigoux took possession at that time. In June 1976, the title to the property was transferred by deed to Gigoux. In December 1975, or January 1976, a survey was made of the property. Later in January 1976, Lagan had the remnants of the old fence partially torn out and had corner posts placed in the ground 14 feet north of the old fence line at the northeast corner, and approximately 13 feet north of the old fence line at the northwest corner. Gigoux then removed and stacked the remaining posts from the old fence line, removed two trees, and has since cultivated all but a small portion over the old fence line.

On March 5, 1976, appellant brought suit to have the old fence line established as the true boundary line and to quiet title to the property encompassed thereby. The trial court found all issues for the defendant on the basis of res judicata.

The purpose of a quiet title action is to determine who is the real owner of the property and to put to rest all adverse claims. *Schultz v. Evans,* 204 Okl. 209, 228

P.2d 626 (1951). In a quiet title action all matters affecting title of the parties thereto may be litigated and determined. *Akers v. Hintergardt,* 201 Okl. 213, 203 P.2d 883 (1949). A judgment in such an action bars subsequent litigation on the same cause of action between the same parties and their privies. It is final and conclusive as to all issues actually litigated, as well as those that should have been raised and determined. *Home Development Co. v. Hankins,* 195 Okl. 632, 159 P.2d 1013 (1945).

The judgment in Case No. 31,359 on its face adjudicated the boundary between these two tracts. The description was sufficient to establish the legal boundary between the two tracts because the description is sufficient to allow the location thereof to be fixed with certainty. *Alston v. Clinton,* 73 N.M. 341, 388 P.2d 64 (1963). Therefore, to the extent that any of the appellant's claims could have, or should have been brought in 1967, they are now barred by judgment.

Dodds seeks to quiet title to the property north of the old fence line on four theories: adverse possession, practical location, acquiescence, and estoppel.

■ In support of his contention that this property has been acquired by adverse possession, appellant seeks to tack his possession to that of Mr. Triplett, whose tenant had farmed the property in question from 1942–1967. At the time of the Y.M.C.A. quiet title action, the possession of Mr. Triplett would have been 10 years beyond the time required to establish adverse possession. Thus the claim of adverse possession could have been brought in the 1967 quiet title suit. Since it was not raised at that time, the claim is now barred by the judgment in Case No. 31,359.

It should be further noted that there was evidence produced at trial that in 1960 Mr. Triplett entered a disclaimer of any interest in the property claimed by the Lagans when Anna Lagan's estate was probated. The Lagan deed at this time provided that the property extended 80 rods north of the southeast corner of Section 29.

Appellant next claims the property north of the old fence line by practical location. In 1970 James Henry Lagan, co-owner and brother of Alice Lagan, desired to erect an electric fence in the location of the old fence line. He apparently intended to pasture some cattle. Mr. Dodds discussed the erection of the fence with James Lagan and assented to its location. Appellant contends that this occurrence constitutes the establishment of the boundary by practical location.

■ The setting of a boundary by practical location is an actual designation by the parties on the ground of the monuments and bounds called for in their deeds in an attempt to settle a *boundary dispute.* *Lewis v. Smith,* 187 Okl. 404, 103 P.2d 512 (1940); *Lake v. Crosser,* 202 Okl. 582, 216 P.2d 583 (1950). Here, there was no boundary dispute that was being settled by the erection of the electric fence. In practical location the setting of a fence must be for the purpose of setting the boundary line— not to restrain cattle. *Drury v. Pekar,* 224 Or. 37, 355 P.2d 598 (1960).

■ Appellant next claims acquiescence of the appellees in the boundary line being the old fence line. To establish a boundary line by acquiescence, other than the true line as called for by the conveyances relating to the legal title, the claimed boundary line must be open to observation marked by monuments, fences, or buildings, and knowingly acquiesced in as the recognized true boundary line for a long period of time. *Beckman v. Metzger,* Okl., 299 P.2d 152 (1956).

■ The evidence of record does not support appellant. There is no evidence that the adjoining property owners ever intended to or participated in attempting to establish that fence as the true boundary. There is not sufficient evidence to prove that the fence was ever intended to be, or actually was situated on the true boundary line between the tracts. In this regard, neither party supplied this or the trial court with a survey of the property that is the subject of this litigation. Parties recognizing and ac-

quiescing in a certain line as the true boundary between their adjoining lands through mutual mistake as to its proper placement, are not precluded from asserting the true division line. *Irelan v. Hall,* Okl., 295 P.2d 775 (1956).

 Appellant lastly contends that appellees should be estopped from claiming the boundary as described in the Journal Entry of Case No. 31,359. Estoppel arises by acts or declarations of a party by reason of which another person has been led to change his position for the worse or has in any manner been injured to the benefit of the parties against whom the estoppel is claimed. In this regard, the Supreme Court in the case of *St. Louis & S. F. Ry. Co. v. Mann,* 79 Okl. 160, 192 P. 231, at p. 233 (1920), stated as follows:

> It is well settled that an estoppel cannot be set up against a party ignorant of the true state of affairs, or whose conduct was based upon pure mistake. To establish estoppel by conduct, it is necessary that the conduct relied upon should have been intended to influence the other party to act, and if there was no such intent the estoppel is not made out.

Appellant here shows no intent on behalf of the appellees to induce or influence him to change his position for the worse or where he has been injured to the benefit of appellees. The mere fact that for a long period of time, through mutual mistakes, adjoining owners have treated a line as the boundary, this will not estop them from claiming to the true line. *Kinne v. Waggoner,* 108 Kan. 814, 197 P. 195 (1921). Failure to object to an encroachment which is unknown to the landowner encroached upon, will not estop him from insisting on the establishment of the true line. *U. S. v. Wilcox,* D.C., 258 F.Supp. 944 (1966); *Summers v. Holder,* 254 Or. 180, 458 P.2d 429 (1969).

An action to quiet title to real property is an equitable action. *Pruitt v. Hammers,* Okl., 292 P.2d 157 (1956). In cases of equitable cognizance, an appellate court is not bound by the trial court's reasoning or by its findings. The appellate court will examine the whole record, con-sider and weigh the evidence, and if the law and facts warrant, the court will affirm the judgment if the trial court reached the correct ultimate conclusion. *Public Service Co. of Oklahoma v. Home Builders Ass'n of Realtors, Inc.,* Okl., 554 P.2d 1181 (1976).

A review of the record of this case reveals that the trial court reached the correct ultimate conclusion.

AFFIRMED.

ROMANG, P. J., and BOX, J., concur.