1998 OK CIV APP 134

Ronnie **BERRY** and Colene Berry, Husband and Wife, Plaintiffs/Appellees,

v.

Billy **MENDENHALL** and Wayne Clark, Defendants/Appellants.

No. 89385.

Court of Civil Appeals of Oklahoma, Division 3.

Aug. 31, 1998.

Michael D. Clover, Stuart & Clover, Shawnee, for Plaintiffs/Appellees.

Billy Joe Ellington, Cushing, for Defendants/Appellants.

BUETTNER, Presiding Judge.

¶1 Defendants/Appellants Billy R. Mendenhall[1] (Mendenhall) and Wayne Clark (Clark) appeal from judgment settling a boundary line and awarding damages and attorney fees against them. Plaintiffs/Appellees Ronnie and Colene Berry (Berrys) filed their action for determination of boundary by acquiescence and trespass and damage to property July 29, 1996. After a bench trial held March 4, 1997, the trial court established the boundary, between property owned by the Berrys and property owned by Clark, along the fence line as the Berrys had requested. The trial court further awarded damages to the Berrys for Clark's trespass and removal of the fence. Because we hold the trial court's finding, that the boundary line had been established by acquiescence for the statutory period, is not against the clear weight of the evidence, we affirm the judgment.

¶2 The Berrys purchased their one and a half acre tract in the southwest corner of the northwest quarter of section 21–14N–4E, Lincoln County, in 1965. Ronnie Berry testified that when he and his wife purchased the property there was a fence on the north and east edges of the property. On the north, the fence was 25 feet from the Berrys' house; it ran along the tree line on the east. Ronnie Berry further testified that the tract borders a county road on the west side, which is not fenced. The south side is not fenced because Berry farms the land south of the tract at issue.

¶3 Berry testified that when he purchased the property the fence was made of barbed wire and hog wire. By 1996, 100 feet of the fence was in the same condition it had been in 1965. The remaining fence had been improved with newer wire and steel posts. The location of the fence had not changed during the Berrys' ownership. Berry testified that he built a well house along the fence line in 1971.

¶4 Ronnie Berry explained that at the time of trial, the fence was no longer standing because Mendenhall and Clark pulled it out on July 22, 1996. Colene Berry and the Berrys' daughter observed Mendenhall and Clark removing the fence. Later that evening, Ronnie Berry and three other men began putting steel posts in the holes where the fence posts had been in order to mark where the fence had been. Clark approached them and told them they were trespassing on his property. The Berrys videotaped Clark and Mendenhall as they removed more of the fence later.

¶5 Ronnie Berry testified that he had maintained the property inside the fence, and had used all of the property up to the fence line, since 1965. Berry introduced photographs of the fence taken in the early 1970s, as well as an accounting of the value of the removed wire and posts and an estimate for rebuilding the fence. Berry testified that it would cost $1,157.49 to replace the fence.

¶6 On cross-examination, Berry testified there had been a prior lawsuit between the Berrys and Mendenhall in 1993 and that at least one survey had been completed then. However, the boundary line along the one and a half acre tract involved in the instant dispute was not settled in the 1993 case. Berry testified that David L. Mayes surveyed the tract in dispute in the instant case and determined the boundary to be along the fence line.

¶7 Brenton Cox testified that he has lived near Chandler all his life and that he remembered the fence being in place on the Berrys' land at least since 1976 when he started borrowing farming equipment from the Berrys. Randy Harkins testified that he

1. Mendenhall's wife, Winifred E. Mendenhall, was originally named as a defendant in this matter, but the Berrys dismissed the action against Winifred Mendenhall at the beginning of trial.

went to the Berrys' house July 22, 1996, at Ronnie Berry's request, to see the fence posts which had been removed. Harkins testified he helped Berry place stakes in the holes where the fence had been to mark its location. Harkins testified that Clark came up to the men and indicated he intended to build a new fence where the survey flag was, fifteen feet away from the fence he had torn out. Lyle Ritterhouse testified that he also visited the Berrys' house on the evening of July 22, 1996 to survey the damage to the fence.

¶8   Colene Berry testified that she and her husband moved onto the property in 1965 and the fence was in place then. Colene identified the Berrys' exhibits 8 and 9, twenty-six year old photographs of their children which showed the fence in the background. Colene testified that on July 23, 1996, the day after the fence was removed, she and one of her daughters were putting the fence back up when Mendenhall came and told them not to put the fence up and to stop trespassing or he would call the sheriff. Colene concluded her testimony by stating that the Berrys have used the property up to the fence line continuously since 1965 and that they believed the fence was the boundary line when they purchased the property in 1965.

¶9   Mendenhall's father, now deceased, had leased the tract north of the Berrys from a Mr. and Mrs. Nickell. Mendenhall was a state trooper, but farmed with his father "casually" since 1962. In 1991, Mendenhall purchased the property from the Nickell's heirs and assigned 10 acres to his son-in-law, Clark. Mendenhall testified that there was no fence separating the tracts from 1972 until 1993. Mendenhall later testified he thought the Berrys removed the fence in order to rebuild their home which burned in 1982. Colene Berry rebutted this testimony by saying there would have been no reason to take the fence down to enter the Berrys' property from the north because they had a driveway and road access on the south. Clark testified that when he purchased the property in 1991 "there was no fence that (he) knew of there." Clark testified that he and Mendenhall and Ronnie Berry hired a surveyor and that he discovered the fence after the survey was complete. Clark testified that he took the fence down because he believed it was in the wrong place. Clark later testified that, although he had lived across the road from the Berrys since 1978, he was not familiar with the Berrys' land enough to know if there was a fence there. When confronted with the Berrys' exhibit 9, a photograph showing the fence in the early 1970's, Clark was unwilling to agree that what "appeared to be a fence" really was a fence.

¶10   The trial court entered judgment for the Berrys, establishing the boundary line as the location of the fence as it existed until it was removed in July 1996. The court further ordered that the Berrys were entitled to rebuild the fence in the same location. Finally, the court awarded $1,157.49 in damages plus costs and attorney fees.

¶11   The determination of a boundary by acquiescence is a matter of equitable cognizance and will not be reversed unless it is against the clear weight of the evidence. *Schoenecke v. Yost,* 1989 OK 39, 776 P.2d 1262, 1265; *Grunden v. Hurley,* 1987 OK CIV APP 30, 736 P.2d 548, 550. On appeal, Mendenhall and Clark argue first that the doctrine of boundary by acquiescence requires an agreement by the parties that the purported boundary line is the true boundary.

¶12 Boundary by acquiescence has been found:

> Where adjoining landowners occupy their respective premises up to a certain fence line which they mutually recognize and acquiesce in for a long period of time, usually the time prescribed by the statute of limitations, they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one.

*Lewis v. Smith,* 187 Okla. 404, 103 P.2d 512 (1940). In *Lewis,* the Court considered four factors for establishing a boundary by prescription: 1) the division of a unit of land; 2) a fence or other boundary between the two portions which deviates from the true line established by government survey; 3) continued maintenance of the fence for a sufficient

time period; and 4) the parties' use of the land on either side. The intention of the parties in establishing the boundary is *not* the determining issue. See *Threet v. Polk,* 1980 OK CIV APP 34, 620 P.2d 467; *Leach v. West,* 1972 OK 162, 504 P.2d 1233; *Johnson v. Whelan,* 186 Okla. 511, 98 P.2d 1103. Whether the parties knew of the errant boundary marker is also irrelevant. *Id.* Mendenhall and Clark assert that *Dodds v. Lagan,* 1979 OK CIV APP 12, 595 P.2d 452, requires that the parties "knowingly acquiesced" in establishing the errant boundary. In *Dodds,* this court noted there was no evidence the parties established the fence as the boundary. In the instant case the parties (or their predecessors) treated the fence as the boundary until 1996. We therefore find no violation of *Dodds'* requirement that the parties treated the fence as the boundary.

¶ 13 The clear weight of the evidence in this case established that the Berrys used the land up to the fence, treating the fence as the boundary, for thirty years before Mendenhall, Clark, or a predecessor in title objected. The term for acquiring property by prescription or acquiescence is fifteen years. 12 O.S.1991 § 93(4); *Leach,* 504 P.2d at 1238. Based upon the evidence presented, the trial court's determination of the fence as the boundary line by acquiescence is not against the clear weight of the evidence.

¶ 14 Because we affirm the trial court's determination of the boundary line, we do not reverse the award of damages to the Berrys. Additionally, we affirm the award of prevailing party attorney fees.

AFFIRMED.

HANSEN, and ADAMS, JJ., concur.