2002 OK CIV APP 112

OAKS COUNTRY CLUB, a corporation, Plaintiff/Appellee,

v.

The FIRST PRESBYTERIAN CHURCH, U.S.A. of Tulsa, Oklahoma and Camp Loughridge, an Oklahoma not for profit corporation, Defendants/Appellants.

No. 96,669.

Court of Civil Appeals of Oklahoma, Division No. 3.

July 19, 2002.

Certiorari Denied Nov. 4, 2002.

John L. Harlan, John L. Harlan & Associates, Sapulpa, Oklahoma, for Plaintiff/Appellee.

Sam T. Allen, IV, Loeffler, Allen & Ham, Sapulpa, Oklahoma, for Defendants/Appellants.

Opinion by CAROL M. HANSEN, Presiding Judge:

¶1 W.H. Ahrens and Alberta V. Ahrens owned the SW/4 of Section 4 T18N, R12E, Creek County, Oklahoma. They also owned the SE/4 of Section 5, T18N, R12E, Creek County, Oklahoma. These quarter sections adjoin each other, and were separated by a fence running north/south.

¶2 In 1947, the Ahrens conveyed by warranty deed the SW/4 of Section 4, T18N, R12E to Plaintiff, Oaks Country Club. The Ahrens family continued to use the SE/4 of Section 5, T18N, R12E, generally as pastureland. Since the early 1950's, Plaintiff has maintained and operated a golf course continuously upon the property conveyed to it by the Ahrens. This was the same golf course operated by Walter Ahrens and his associates from the mid–1920's to 1947. The west boundary of the 16th fairway runs along the north/south fence separating the SW/4 of

Section 4 from the adjoining quarter section of the SE/4 of Section 5.[1]

¶ 3 After Ahrens died in 1959, title to the pastureland was passed to his wife, and after her death, to their heirs. In 1989, Ahrens' heirs sold the pastureland (SE/4 of Section 5, T18N, R12E) to Defendant, The First Presbyterian Church, U.S.A. of Tulsa, Oklahoma, (Defendant Church). Later, Defendant and Defendant, Camp Loughridge (Defendant Camp), entered into an agreement for Defendant Camp to use the land.[2]

¶ 4 The officers and directors of Defendant Church obtained a survey of the land from a registered land surveyor. The survey showed the fence separating the adjoining quarter sections is not located on the section line but is located on the land Defendant Church purchased in the SE/4 of Section 5. Defendant Church was informed of this encroachment. Neither Defendant Church nor Defendant Camp ever asked Plaintiff to move the fence.

¶ 5 In June 1994, the director of Defendant Camp tore down approximately 200 feet of the fence in order to grade out the baseball diamond on the Camp property near the fence. The director did this without consulting any other member of Defendant Camp, Defendant Church, or an attorney. In September 1994, Plaintiff reconstructed that portion of the removed fence in the original location where it had been since before it purchased its property in 1947. The fence remains there today.[3]

¶ 6 Beginning in the spring of 1995 a director of Defendant Camp and Plaintiff's board of directors and president met to discuss possible extension of the water contract along with discussions regarding the fence.

Specifically, Plaintiff's president suggested the fence be built in a more attractive manner, but would not agree that it should be built on the actual boundary line. They also discussed the possibility of Plaintiff trading other property adjacent to Defendant Camp's property to compensate for a transfer of the Defendant Camp property inside Plaintiff's fence. At no time did Plaintiff's president dispute the fence was over the Defendant Camp and Church property line. The discussions relating to the water contract and the fence line land trade never came to fruition.

¶ 7 In May 2000, Plaintiff filed this action to determine whether the above-mentioned fence constitutes a "boundary by acquiescence." On July 11, 2001, following a non-jury trial, the trial court entered a journal entry of judgment. Therein, the trial court made numerous findings of fact. Among other things, the trial court found: "[t]he fence has been open, obvious and visible at all material times;" that when Plaintiff purchased the property from Ahrens, it "was aware or should have been aware of the fence location and resulting encroachment at the time of purchase;" neither Defendant Camp nor Defendant Church "ever asked Plaintiff to move the fence;" that the fence "has been in place, recognized, maintained and acknowledged as the boundary between Plaintiff Oaks Country Club and the Ahrens family from the early 1950's to at least 1989;" The trial court also found that from the early 1950's to 1989 is at least 33 years before Defendant Church acquired the land from the Ahrens family. It further found "[t]he requisite period to establish title by adverse possession is 15 years. The fence became the legal boundary long before January

---

1. In 1952 the Ahrens entered into an agreement with Plaintiff whereby Plaintiff agreed to furnish Ahrens, his agents, tenants, and employees with gas, electricity, and water in connection with the dwellings, buildings, and equipment located on the adjacent pastureland. In consideration, the Ahrens agreed to permit Plaintiff to take water from a lake on Ahrens' pastureland for the purpose of watering the country club grounds, greens and fairways. This contract was continuously renewed and was in effect in 1989, at the time Defendant, First Presbyterian Church, U.S.A. of Tulsa, Oklahoma, purchased Ahrens' pastureland. The contract expired in 1998.

2. Defendant Camp leases the property from Defendant Church.

3. There are three metal ladders along the fence that facilitate traverse over the fence line both ways. These ladders have been in place since sometime in the 1950's. Members of Plaintiff country club use the ladders to retrieve golf balls on the Defendant Camp/Defendant Church property.

1989." The trial court concluded that Plaintiff acquired title by adverse possession to the land between the fence and the section line separating Plaintiff's land from Defendant's land and that neither Defendant Church nor Defendant Camp had any right, title or interest therein. Defendants Church and Camp appeal.

¶ 8 Defendants contend that prescription by adverse possession requires that possession of the property be "exclusive and hostile" to the rights of the record title holder. Because such hostility and exclusiveness did not exist and because there was no such finding in the trial court's order, the trial court's decision in granting Plaintiff the property was clearly against the weight of the evidence.

¶ 9 Plaintiff points out that it has contended all along it is entitled to judgment based upon the doctrine of boundary by acquiescence. The element of hostility, necessary for an adverse possession claim, is not required to establish a boundary line by acquiescence. *See, Lewis v. Smith,* 1940 OK 276, 103 P.2d 512. Oklahoma recognizes this doctrine, which " . . . seems to occupy a middle ground between adverse possession and estoppel in pais." 69 ALR 1431. The doctrine has also been described as " . . . one of the most common types of adverse possession." Rosser and Guse, *Adverse Possession in Oklahoma: An Idea Whose Time Has Come and Gone?* 72 OBJ 715 (2001).

¶ 10 In *Lewis v. Smith,* two brothers, Charles and Sam Smith owned two quarter sections. They divided the land—Charles, father of the plaintiff, taking the north tract, and Sam, the remote grantor of the defendant, taking the south tract. They erected a fence on a line running east and west across the half section, and the fence, maintained and repaired by both men and their successors, remained until the litigation. Twenty-seven years after Charles and Sam erected the fence, a survey was made which revealed the fence line did not correspond to the true boundary line dividing the north and south tracts. There was no evidence to indicate

whether the fence was built by agreement to be the location of the true boundary or whether the true boundary was known or unknown to Sam or Charles. There was no evidence to indicate whether either of the Smith brothers knew of the mistake, if it was a mistake, instead of a deliberately pitched fence.

¶ 11 The Supreme Court found the following factors were sufficient to establish title by acquiescence: (1) the division of a unit of land; (2) the running of a fence between the divided portions of the unit deviating from the true line as established by government survey; (3) the continued maintenance of the fence for 27 years; and (4) the use by the respective parties of the land lying only on their respective sides of the fence. The Supreme Court held that whether there is a dispute or uncertainty regarding the true boundary is not a prerequisite in establishing a boundary by acquiescence.

¶ 12 In quoting 8 Am.Jur. 802, sec. 80, the Supreme Court stated, "It is well established that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time . . . usually the time prescribed by the statute of limitations . . . they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one."

¶ 13 In the present case, there is a division of a unit of land owned by Ahrens; there is a fence between the quarter sections which deviates from the true line as established by the 1989 survey; the fence has been in existence since the early 1950's (with the exception of Defendant Camp director tearing down 200 feet of the fence to grade the ball diamond and Plaintiff reconstructing it three months later);[4] and both Plaintiff and Defendants, and before Defendants, the Ahrens, used the land lying only on their respective sides of the fence. Moreover, there was a mutuality of recognition of and acquiescence in the fence as the boundary.

4. Proof of continuous possession for the statutory period of fifteen years is necessary to establish title by acquiescence, prescription, or adverse possession. *Kinkade v. Simpson,* 1948 OK 186, 197 P.2d 968.

¶ 14 Plaintiff acquired title by acquiescence to the land lying between the fence and the governmental section line separating Plaintiff's land in the SW/4 of Section 4, T18N, R12E, from Defendants' land in the SE/4 of Section 5, T18N, R12E, and neither Defendant Church nor Defendant Camp has any right, title or interest therein.

¶ 15 Because an equity decree may be affirmed if it is sustainable on any rational theory and the ultimate conclusion is legally correct, (*Bankoff v. Board of Adjustment of Wagoner County,* 1994 OK 58, 875 P.2d 1138), the decision of the trial court is AFFIRMED.

ADAMS, J., and MITCHELL, J., concur.