2008 OK CIV APP 13

Calvin EUBANKS and Naomi Eubanks, Plaintiffs/Appellees,

v.

Sheryll ANDERSON, Defendant/Appellant.

No. 104,599.

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 19, 2007.

Rehearing Denied Nov. 26, 2007.

Certiorari Denied Jan. 28, 2008.

Roger K. Eldredge, Steven M. Ruby, Norman, Wohlgemuth, Chandler & Dowdell, Tulsa, Oklahoma, for Plaintiffs/Appellees.

Steven R. Hickman, Frasier, Frasier & Hickman, LLP, Tulsa, Oklahoma, for Defendant/Appellant.

DOUG GABBARD II, Presiding Judge.

¶ 1 Defendant, Sheryll Anderson, appeals the trial court's denial of her request for a temporary injunction. Based upon the facts and the law, we affirm.

## BACKGROUND

¶ 2 This case involves a boundary line dispute between two neighbors in rural Tulsa County, Oklahoma. Defendant's property is immediately to the north of, and adjacent to, property owned by Plaintiffs, Calvin Eubanks and Naomi Eubanks (collectively, "the Eubanks"). The properties are separated by a fence consisting of pig panels and one strand of barb wire (the "pig fence"). The pig fence is located on the Eubanks' property, three to four feet south of the true boundary line, and travels, east-to-west, the entire 1,390–foot length between the two tracts. The pig fence was built by Defendant's in-laws and predecessors in title, the Fenimores, shortly before the Eubanks' purchased and moved onto their tract 36 years ago. Defendant purchased the Fenimore property in 2000. It was unimproved and, except for a six-month period during the 1970's, was unoccupied.

¶ 3 In 2005, Defendant moved her travel trailer onto her property and began living there. In 2006, the present dispute arose after Defendant allegedly began removing trees within the area between the pig fence and the true boundary line, and the Eubanks began constructing a wooden privacy fence on the true boundary between the parties' tracts.

¶ 4 Plaintiff Calvin Eubanks initiated this action in small claims court for the recovery of damages based upon Defendant's alleged removal of trees from his land. Defendant filed an answer, counterclaim, and third-party petition joining Calvin's wife and joint owner Naomi Eubanks, as an additional Plaintiff. Defendant sought to establish her title to the disputed parcel. She also sought a temporary injunction against the Eubanks to prohibit them from using the disputed parcel and from completing construction of the privacy fence. At the time of the hearing on the temporary injunction, the Eubanks had completed construction of the new fence between the two homes, but had not finished construction along the entire boundary between the two tracts.

¶ 5 At the temporary injunction hearing, Defendant testified that she had regularly visited the property for at least 17 years, that the pig fence had always separated the two tracts, and that her in-laws had always maintained and used the land adjacent to the

pig fence, including brush-hogging, clearing, and running horses thereon. She admitted she did not know who constructed the pig fence or why it was constructed and although she had never talked to anyone about it she had always considered the land next to the fence to belong to her in-laws, and now to her.

¶ 6 Defendant's son, Robert Fenimore, also testified. He stated that the pig fence had separated the two properties for as long as he could remember, and that he and his family had used their property all the way to the pig fence. He also stated that he had helped clear their property before they moved onto it.

¶ 7 Naomi Eubanks testified she and her husband had lived on their property since 1971, and had never considered the pig fence the boundary line. She stated that the fence had been built by a person who rented the Fenimore land as pasture. She also testified that her husband and a neighbor had measured the pig fence and knew that it was three feet south of the true boundary. She admitted that the Fenimores had kept horses on their property for a short time period ten to fifteen years ago.

¶ 8 Calvin Eubanks testified that he had discussions with Mr. Fenimore, Defendant's predecessor in title, about the pig fence. He testified that he and Mr. Fenimore both understood the pig fence was not on the boundary line, but that Mr. Fenimore's lessee had built it merely to facilitate use of the Fenimore's property as a horse pasture, and that Mr. Fenimore told him "if we had problems with the guy that ran the pasture that he would move the fence, you know, put it back where it——on the property where the property line's supposed to be." Calvin Eubanks testified that Mr. Fenimore never claimed ownership of land all the way to the pig fence, and that the first such claim was by Defendant within the last year or two. He also stated that no one had maintained Defendant's property until about three years ago when she moved onto it, and, prior thereto, the grass and brush were so high that the pig fence could barely be seen from her property.

¶ 9 The trial court refused to grant a temporary injunction. The court found Defendant could not show that she and her predecessors in title had treated the pig fence as the boundary line for the statutory time period, and that Mrs. Eubanks, not Mr. Fenimore and Defendant, had maintained the strip for the majority of the time in question. Defendant appeals.

**STANDARD OF REVIEW**

¶ 10 In reviewing an order granting or refusing an injunction, an appellate court is not bound by the reasoning or the findings of the trial court, but may examine, consider, and weigh all the evidence. *Jackson v. Williams*, 1985 OK 103, ¶ 9, 714 P.2d 1017, 1020. However, this Court will not reverse unless the trial court abused its discretion or entered a judgment clearly against the weight of the evidence. *Johnson v. Ward*, 1975 OK 129, ¶ 42, 541 P.2d 182, 188.

**ANALYSIS**

¶ 11 In her appellate brief, Defendant raises two propositions of error. She contends first, that the trial court erred in applying the law to the facts. Second, Defendant argues the trial court's decision is against the clear weight of the evidence.

¶ 12 Injunction is an extraordinary remedy and injunctive relief should not be lightly granted. *Amoco Prod. Co. v. Lindley*, 1980 OK 6, ¶ 50, 609 P.2d 733, 745. In deciding whether to issue a temporary injunction, a trial court must consider four factors: (1) an applicant's likelihood of success on the merits; (2) whether irreparable harm would accrue to the party seeking relief should the temporary injunction be denied; (3) the relative effect on other interested parties; and (4) any public policy concerns arising out of the issuance of injunctive relief. *See Roye Realty & Devel., Inc. v. Watson*, 1990 OK CIV APP 21, ¶ 4, 791 P.2d 821, 823; *McCraw Oil Co. v. Pierce*, 2004 OK CIV APP 7, ¶ 6, 83 P.3d 907, 910.

¶ 13 In determining whether Defendant is likely to succeed on the merits, we have reviewed the touchstone cases establishing the doctrine of boundary by acquiescence. In *Lewis v. Smith*, 1940 OK 276, 103 P.2d 512, the Supreme Court made the following observation:

It is well established that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time ... usually the time prescribed by the statute of limitations ... they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one.

*Id.* at ¶ 9, 103 P.2d at 514 (quoting 8 Am.Jur. 802, § 80). The Court defined acquiescence as "quiescence under such circumstances that assent may be reasonably inferred from it." *Id.* at ¶ 17, 103 P.2d at 514. It concluded that "when parties possess and use the land lying on their respective sides of the fence only," courts will look upon that fact as evidence of mutual acquiescence. *Id.* at ¶ 17, 103 P.2d at 515. Dispute or uncertainty regarding the true boundary is not a prerequisite in establishing a boundary by acquiescence.

█ ¶ 14 In *Lake Benton v. Crosser,* 1950 OK 49, 216 P.2d 583, the Oklahoma Supreme Court noted that there are two classes of boundary line cases: (1) cases where the boundary line is acquiesced in by adjoining landowners for the prescriptive period,[1] but one or both did not actively participate in its establishment; and (2) cases where the boundary line is the result of actions by both parties, the length of time the boundary has been in existence not being important because it will be established on a theory of executed parol agreement or estoppel. *Id.* at ¶ 8, 216 P.2d at 585. In the former case, the element of hostility, necessary for an adverse possession claim, is not required.[2] *Id.* In the latter situation, however, in order to establish a boundary by practical location, the fence must have been built for the purpose of setting the boundary and not for other purposes such as restraining cattle. *See Dodds v. Lagan,* 1979 OK CIV APP 12, ¶ 13, 595 P.2d 452, 455 (citing *Drury v. Pekar,* 224 Or. 37, 355 P.2d 598 (1960)).

¶ 15 In *Berry v. Mendenhall,* 1998 OK CIV APP 134, 964 P.2d 974, the Court of Civil Appeals reviewed the law of boundary by acquiescence, stating:

In *Lewis* [*v. Smith,* 1940 OK 276, 103 P.2d 512], the Court considered four factors for establishing a boundary by prescription: 1) the division of a unit of land; 2) a fence or other boundary between the two portions which deviates from the true line established by government survey; 3) continued maintenance of the fence for a sufficient time period; and 4) the parties' use of the land on either side. The intention of the parties in establishing the boundary is *not* the determining issue ... Whether the parties knew of the errant boundary marker is also irrelevant. Mendenhall and Clark assert that *Dodds v. Lagan,* 1979 OK CIV APP 12, 595 P.2d 452, requires that the parties "knowingly acquiesced" in establishing the errant boundary. In *Dodds,* this court noted there was no evidence the parties established the fence as the boundary. In the instant case the parties (or their predecessors) treated the fence as the boundary until 1996. We therefore find no violation of *Dodds'* requirement that the parties treated the fence as the boundary.

*Id.* at ¶ 12, 964 P.2d at 976–77 (citations omitted).

█ ¶ 16 In the present case, the evidence failed to establish Defendant's right to title by acquiescence under either theory. Under the theory of *boundary by prescription,* there was no evidence of unity of ownership, that is, that an original owner of both tracts established the boundary, nor was there evidence of mutuality of recognition and acquiescence in the fence as the boundary, or use by both parties of only the land on their respective side. Under the theory of *boundary by practical location,* the evidence failed to establish that the fence was built by both parties for the purpose of establishing the boundary line. To the contrary, the evidence indicated that the fence was built to keep horses on Defendant's property during the property's use as a pasture. For these reasons, Defendant failed to establish a likelihood that she would be successful on the merits.

---

1. See 12 O.S.2001 § 93(4).

2. It has been said that this doctrine "seems to occupy a middle ground between adverse posses-sion and estoppel in pais." *Oaks Country Club v. First Presbyterian Church,* 2002 OK CIV APP 112, ¶ 9, 60 P.3d 506, 508 (quoting 69 ALR 1431).

¶ 17 Defendant also failed to demonstrate irreparable harm if the temporary injunction was not granted. "Injury is irreparable when it is incapable of being fully compensated by money damages, or where the measure of damages is so speculative that arriving at an amount of damages would be difficult or impossible." *Manuel v. Okla. City Univ.*, 1992 OK CIV APP 73, ¶ 23, 833 P.2d 288, 293. Here, no evidence was introduced that money damages would be insufficient to compensate Defendant for any loss she might sustain if she ultimately prevailed. Furthermore, no evidence was introduced that the denial or grant of temporary injunctive relief would affect other interested parties or impact public policy concerns.

## CONCLUSION

¶ 18 For these reasons, the trial court's denial of the request for a temporary injunction was proper and is hereby affirmed.

¶ 19 AFFIRMED.

GOODMAN, J., and REIF, J., concur.