SALINAS v. v. SHEETS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:SALINAS v. v. SHEETS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 SALINAS v. v. SHEETS
2018 OK CIV APP 21
Case Number: 115158
Decided: 10/25/2017
Mandate Issued: 03/21/2018
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2018 OK CIV APP 21, __ P.3d __

 
APPROVED FOR PUBLICATION BY THE SUPREME COURT. 

JOE SALINAS and PAULINE TAYLOR, Plaintiffs/Appellees,
v.
TODD ALAN SHEETS, Defendant/Appellant.[1]

APPEAL FROM THE DISTRICT COURT OF
McCURTAIN COUNTY, OKLAHOMA

HONORABLE GARY BROCK, JUDGE

AFFIRMED

Thomas H. Ellis, Idabel, Oklahoma, for Plaintiff/Appellant,
Jon Ed Brown, Hugo, Oklahoma, for Defendants/Appellees.

Bay Mitchell, Presiding Judge:

¶1 Defendant/Appellant Todd Alan Sheets (East Landowner) appeals from a partial journal entry of judgment in which the trial court found that Plaintiffs/Appellees Joe Salinas and Pauline Taylor (Salinas, Taylor or, collectively, West Landowners) owned all right, title and interest to a disputed piece of real property adjoining the parties' properties. We find the trial court's finding that the boundary line had been established by acquiescence for the statutory period is not against the clear weight of the evidence. We also find East Landowner failed to prove the trial court imposed an improper burden of proof. We affirm the judgment.

PROCEDURAL HISTORY

¶2 The parties are adjacent landowners in McCurtain County. A dispute developed between the parties in 2010 about the use and ownership of about eight acres (the Disputed Property) located, depending on which party is asked, on either side of two different boundary lines adjoining the parties' properties. East Landowner sought to quiet title to the Disputed Property, claiming that the property was encompassed within the west boundary line established by survey. West Landowners sought to quiet title to the Disputed Property under the doctrines of adverse possession and/or boundary by acquiescence, claiming that an older fence to the east of the survey line had historically served as the boundary between the two properties. After a non-jury trial, the trial court found that West Landowners owned all right, title and interest to the property under both the doctrines of adverse possession and boundary by acquiescence.[2] East Landowner appeals.[3]

STANDARD OF REVIEW

¶3 An action to quiet title is an action of equitable cognizance, and the judgment of the trial court will be affirmed unless found to be against the clear the weight of the evidence. Krosmico v. Pettit, 1998 OK 90, ¶23, 968 P.2d 345, 351. Questions of law are reviewed by a de novo standard. See Hogg v. Oklahoma Cnty. Juvenile Bureau, 2012 OK 107, ¶5, 292 P.3d 29, 33. The credibility of witnesses and the effect and weight to be given to their testimony are questions of fact to be determined by the trier of fact and are not questions of law for the appellate court on appeal. Hagen v. Indep. School Dist. No. I-004, 2007 OK 19, ¶8, 157 P.3d 738, 740.

TRIAL EVIDENCE

¶4 Bonnie French originally owned all the land involved in this case. Bonnie built a fence (the older fence), running from the north to the south, on the east side of her property. Bonnie conveyed the northwest and southwest tracts to her nephew, Willie French, at some point in the 1960s. Willie sold the southwest tract to Clyde Neill in the early 1970s. Neill owned the property for approximately one year before selling it to Jimmy Hughitt. Hughitt also bought the northwest tract from Willie French in approximately 1978. Hughitt leased both western tracts to West Landowners beginning in 2004, and then sold both tracts to West Landowners in 2010.

¶5 Bonnie retained ownership of the eastern property until she died in approximately 1994; Joe French, Sr. inherited the property after her death. When he died in 1999, his son, Joe French, Jr., acquired the property. Joe French, Jr. sold the property to East Landowner and his father, Alan Sheets, in 2004. East Landowner became the sole owner of the property when Alan died in 2010. In 2010, East Landowner built a fence running north/south on the survey boundary line on the western side of the Disputed Property. He also erected a gate blocking West Landowners' access to a road which passed through the Disputed Property and which served as West Landowners' only access to their property. The present lawsuit ensued.

¶6 None of the parties disputed that the older north/south fence existed on the eastern side of the Disputed Property, and none of the parties disputed the location of the survey boundary line to the west. However, the parties disputed whether a second fence had existed at the survey boundary line. The parties also disputed who had historically used the Disputed Property and for what purpose.

¶7 West Landowner Taylor testified that she had been familiar with the area since 1956. She stated that she had hunted "all over" the western property and that she had never seen a fence or remnants of a fence on the western survey line. West Landowners also presented aerial photographs of the Disputed Property from 1967, 1979, and 1988, none of which appeared to show a fence at the survey boundary line. West Landowner Salinas testified that he had bailed hay, brush hogged, cleaned, and tended pecan trees on the Disputed Property. He also testified he had maintained the road running through the Disputed Property and had put "tin horns" under the road where it crossed a creek that bisected the property. West Landowners claimed that Jimmy Hughitt had used the Disputed Property to bail hay since at least 1988. West Landowners also claimed Hughitt had shown them the east fence as the boundary line before they purchased the property from him.

¶8 Joe French, Jr. testified that he had been familiar with these properties his entire life and that at no time during the previous fifty years had any of the former landowners treated the survey boundary line as a boundary. He also stated that the historical fence on the east side of the Disputed Property had served as the boundary line for "75, 100 years." He further testified that he had walked the property with Alan Sheets before Sheets purchased it and that he told Sheets that the old fence line was the boundary line. French stated that neither he nor his father had ever used the Disputed Property during their periods of ownership.

¶9 East Landowner testified that he had met with the previous west tract owner Jimmy Hughitt before purchasing the eastern property and that they had agreed that the survey boundary on the western side was the boundary between their respective properties. He also stated that his father did not, as Joe French claimed, agree that the eastern fence was the property line. He claimed that he and his father had looked at the survey markers to confirm the boundary several times before purchasing the property.

¶10 East Landowner also presented the deposition testimony of Clyde Neill.[4] Neill testified that he had helped construct a second fence on the western boundary of the Disputed Property in the 1970s and that the fence had served as a boundary between the east and west properties. He also testified, however, that there was only one fence that served as a common property line. He stated that Willie French never claimed ownership to the Disputed Property but that Willie did run cattle and horses over the property.

ANALYSIS

¶11 After reviewing the record and applicable law, we find the clear weight of the evidence established that West Landowners owned the Disputed Property pursuant to the doctrine of boundary by acquiescence. In Lewis v. Smith, 1940 OK 276, 103 P.2d 512, the Oklahoma Supreme Court explained the doctrine as follows:

[Where] adjoining landowners occupy their respective premises up to a certain fence line which they mutually recognize and acquiesce in for a long period of time, usually the time prescribed by the statute of limitations, they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one.

Id., 1940 OK 276, ¶9, 103 P.2d at 514. In Lewis, the Court considered four factors for establishing boundary by acquiescence: (1) the division of a unit of land; (2) a fence or other boundary between the two portions which deviates from the true line established by government survey; (3) continued maintenance of the fence for the statutory period; and (4) the parties' use of the land lying on their respective sides of the fence only. Id., ¶8, 103 P.2d at 514. Fifteen years is the statutory period required to establish title by acquiescence. See 12 O.S. 2011 §93(4).

¶12 East Landowner claims the trial court misapplied the doctrine. East Landowner argues boundary by acquiescence cannot apply where no dispute, uncertainty, or ignorance arose regarding the true boundary's location. East Landowner relies on McGlothlin v. Livingston, 2012 OK CIV APP 48, 276 P.3d 1042, for this proposition. There, another division of this Court did, indeed, find that "A careful reading of [Oklahoma case law] reveals the doctrine of boundary by acquiescence applies only where there is uncertainty or doubt as to the true boundary line, or where no surveyed or recognized boundary line existed when the fence was erected." Id., ¶21, 276 P.3d 1047.

¶13 The cases cited by McGlothlin, however, do not support this statement. To the contrary, Lewis, one of the cases cited by McGlothlin, states "Some of the authorities only permit the establishment of boundaries by recognition and acquiescence where the conduct of the parties arises out of and follows uncertainty or dispute over the true line, but the majority of the cases establish the better reasoned rule that dispute or uncertainty is not a prerequisite." Lewis, ¶16, 103 P.2d at 515 (emphasis added). See also Eubanks v. Anderson, 2008 OK CIV APP 13, 178 P.3d 872 ("Dispute or uncertainty regarding the true boundary is not a prerequisite in establishing a boundary by acquiescence."); Oaks Country Club v. First Presbyterian Church, 2002 OK CIV APP 112, ¶11, 60 P.3d 506, 508 ("The Supreme Court held [in Lewis] that whether there is a dispute or uncertainty regarding the true boundary is not a prerequisite in establishing a boundary by acquiescence.").

¶14 East Landowner also argues that, because Bonnie French built the fence as a cross fence, and not to settle a boundary dispute, the fence could not become a boundary. This proposition fails for several reasons. First, the intention of the parties in establishing the boundary is not the determining factor. Berry v. Mendenhall, 1998 OK CIV APP 134, ¶12, 964 P.2d 974, 977 (citations omitted). Second, the record does not conclusively establish for what purpose Bonnie constructed the fence. Finally, even if Bonnie did not intend for the fence to initially serve as a boundary line, the clear weight of the evidence shows that future landowners recognized and treated the fence as a boundary line. See Holt v. Hutcheson, 1958 OK 299, ¶3, 333 P.2d 530, 533 ("The adoption of a division line between the owners of adjoining lands may be implied from their acts and declarations and by acquiescence in respect thereto, and after the recognition of such division line as the true boundary for the statutory period of limitation, the parties and their privies are estopped from asserting that it is not the true line.").

¶15 We disagree with East Landowner's claim that West Landowners failed to prove sufficient use for the statutory period. As noted above, Joe French, Jr. testified that neither he nor his father had ever used the Disputed Property during their periods of ownership and that the fence had served as the historical boundary line for as long as he could remember. West Landowners testified that Jimmy Hughitt used the Disputed Property as early as 1988 and that he showed them the fence as the boundary line. West Landowners testified that they had bailed hay, brush hogged, cleaned, tended to pecan trees and maintained the road on the Disputed Property. East Landowner presented no evidence to rebut West Landowners' evidence of use, nor did he present any evidence showing that his predecessors had used the Disputed Property.

¶16 We also reject East Landowner's claim that West Landowners' use of the Disputed Property was permissive. At trial, West Landowners admitted that Alan Sheets opened a gate to the Disputed Property for them. East Landowner argues this admission proves their use was permissive. This argument, however, is misleading. West Landowners must travel down a road that passes through another tract owned by East Landowner in order to access their property; a gate stands where this road connects to the Disputed Property. The trial court determined that West Landowners have a valid easement along East Landowner's property, and that finding is not challenged on appeal. Whether Alan Sheets opened the gate at the end of the easement does not conclusively determine that West Landowners' use of the Disputed Property was permissive.

¶17 Finally, we address East Landowner's argument that the trial court imposed an improper burden of proof. East Landowner focuses on the court's statement in its August 20, 2014 decision that "The court finds insufficient credible evidence that any owners ever treated the boundary line as ever being any place other than the fence line" and argues that this statement implies the court improperly put the burden of proof on East Landowner. We disagree. The court also noted that it found credible evidence establishing that the fence line had served as the accepted boundary for at least fifty years. Following that finding with a note that the evidence was unrefuted does not prove that the court improperly shifted the burden of proof.

¶18 The clear weight of the evidence shows that the fifteen year statutory period required to establish boundary by acquiescence was met before East Landowner and West Landowners purchased their respective properties. East Landowner was therefore precluded from asserting that the fence was not the true property line. See Lewis, 1940 OK 276, ¶9, 103 P.2d at 514; Holt, 1958 OK 299, ¶3, 333 P.2d at 533.

¶19 AFFIRMED.

BUETTNER, C.J., and SWINTON, J., concur.

FOOTNOTES

[1] Joe Salinas and Pauline Taylor sued Todd Alan Sheets in McCurtain County case no. CV-2010-80, seeking a writ of assistance, a restraining order, temporary and permanent injunctions, and damages stemming from Sheets' alleged blocking of an easement the parties had allegedly agreed to in the past. Sheets sued Salinas and Taylor in McCurtain County case no. CV-2011-24, seeking to quiet title to the property at issue in this case, as well as a restraining order, temporary and permanent injunctions, and damages

Because the issues in both cases were related, the trial court consolidated the two actions. The court, however, did not choose a surviving case number. Instead, all pleadings and orders going forward included both case styles and case numbers. Appellant Sheets designated items of the record from both proceedings. For simplicity, we refer to Salinas and Taylor as "Salinas, Taylor, or collectively, West Landowners" and to Sheets as "East Landowner."

[2] The court reserved any claims related to trespass and damages and ruled that those claims could be pursued, if at all, in a separate proceeding. The court, however, found there was "no just reason for delay," thus certifying the judgment for immediate appeal. See 12 O.S. 2011 §994.

[3] The court also found that West Landowners had a valid easement across East Landowner's property and enjoined East Landowner from preventing West Landowners' use of the easement. The court denied West Landowners' applications for a protective order. These findings are not challenged on appeal.

[4] The parties stipulated that Neill was mentally incompetent due to dementia and unable to testify at the time of trial on July 18, 2014. The court admitted his deposition, taken on April 20, 2012, into evidence in place of his in-court testimony. At trial, West Landowners challenged Neill's competency at time of the deposition.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2002 OK CIV APP 112, 60 P.3d 506, OAKS COUNTRY CLUB v. THE FIRST PRESBYTERIAN CHURCH
Discussed
 2008 OK CIV APP 13, 178 P.3d 872, EUBANKS v. ANDERSON
Discussed
 2012 OK CIV APP 48, 276 P.3d 1042, MCGLOTHLIN v. LIVINGSTON
Discussed
 1998 OK CIV APP 134, 964 P.2d 974, 69 OBJ 3389, Berry v. Mendenhall
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1940 OK 276, 103 P.2d 512, 187 Okla. 404, LEWIS v. SMITH
Discussed at Length
 1958 OK 299, 333 P.2d 530, HOLT v. HUTCHESON
Discussed at Length
 2007 OK 19, 157 P.3d 738, HAGEN v. INDEP. SCHOOL DIST. NO. I-004
Discussed
 2012 OK 107, 292 P.3d 29, HOGG v. OKLAHOMA COUNTY JUVENILE BUREAU
Discussed
 1998 OK 90, 968 P.2d 345, 69 OBJ 3237, Krosmico v. Pettit
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 93, Limitation of Real Actions
Cited
 12 O.S. 994, Procedure When There is More Than One Claim or Party - Final Judgment
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA